MARY H. SMITH, as Administratrix, etc., of ALFRED C. SMITH, Deceased, Respondent, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Second Department, June 21, 1918.

**Negligence causing death — no action lies until letters of administration granted — letters cannot be granted nunc pro tunc as of date of petition therefor — damages — excessive verdict.**

An action to recover damages for death caused by negligence cannot be brought before the plaintiff has been granted letters of administration even though she filed a petition for letters on the day the action was brought.

Moreover, the surrogate, on subsequently granting letters, has no power to grant them *nunc pro tunc* as of the date of the petition therefor, and such order is insufficient to support an action for death caused by negligence.

*Held*, that a verdict of $49,000 for the death of a laborer and mechanic was excessive although he was the sole support of a wife and family.

PUTNAM, J., dissented in part.

APPEAL by the defendant, The New York Central Railroad Company, from a judgment of the Supreme Court in favor

of the plaintiff, entered in the office of the clerk of the county of Westchester on the 13th day of August, 1917, upon the verdict of a jury for $49,000, and also from an order entered in said clerk's office on the 13th day of September, 1917, denying defendant's motion for a new trial made upon the minutes.

*John F. Brennan*, for the appellant.

*Thomas J. O'Neill* [*Leonard F. Fish* with him on the brief], for the respondent.

BLACKMAR, J.:

The action was brought to recover damages for negligence causing the death of one Alfred C. Smith, the husband of plaintiff. The decedent met his death on the 23d of February, 1917. The action was begun on February 26, 1917, and the complaint alleged that prior to the commencement of the action the plaintiff was duly appointed administratrix of the goods, chattels and credits of decedent. The allegation was denied in the answer. It appears that on February 26, 1917, a petition was duly filed for letters of administration, but no action was taken thereon by the surrogate until March sixth, when letters were issued to the plaintiff. On April twenty-fourth, the surrogate, upon motion of plaintiff's attorney as attorney for the administratrix, granted an order amending the letters *nunc pro tunc* " so that the same shall provide that the said letters were issued, and the said decree was entered as of February 26th, 1917," etc.

The point having been reserved by proper exceptions on the trial, the appellant urges a reversal of the judgment on the ground that plaintiff was not an administratrix when the action was commenced, and we think this contention must be upheld. The cause of action for negligence causing death is, by the precise terms of the statute which authorizes the action, given to the executor or administrator. It is not given to the widow, children or next of kin, and an action cannot be maintained by them. (Code Civ. Proc. § 1902.) The allegation of the complaint that the plaintiff was appointed administratrix before the commencement of the action was necessary to the statement of a cause of action, and as it

was denied, the action cannot be maintained unless it is established on the trial.

We sometimes find it stated in general language that the appointment of an executor or administrator relates back to the death of the decedent. (*Allen* v. *Eighmie*, 9 Hun, 201; 18 Cyc. 213.) This rule, however, has been held not to be broad enough to sustain an action brought by one who at the time the action was commenced had no letters, but who received them afterwards. (*Gatfield* v. *Hanson*, 57 How. Pr. 331; *Thomas* v. *Cameron*, 16 Wend. 579; *Bellinger* v. *Ford*, 21 Barb. 311. See, also, *Dutcher* v. *Dutcher*, 88 Hun, 221.) As the executor gets his office from the will, he had at common law broad powers before probate; but even these have been limited by statute. On the other hand, the office of administrator is derived entirely from the letters granted by the surrogate. Nor can the doctrine of relation avail to sustain an action brought before letters granted, and upon a cause of action not derived from decedent nor belonging to decedent's estate, but given by statute direct to the executor or administrator, the avails whereof are distributable under special statutory provisions differing from both the statute of descent of realty and of distribution of the personal estate of decedent. (Code Civ. Proc. § 1903.)

The plaintiff was not the administratrix when the action was commenced, and no subsequent order can change that fact. As was said in *Guarantee Trust Co.* v. *P., R. & N. E. R. R. Co.* (160 N. Y. 1, 7), " While a court may record an existing fact *nunc pro tunc*, it cannot record a fact as of a prior date when it did not then exist." A belated appointment of a guardian *ad litem* is an entirely different matter. The cause of action belongs to the infant (Code Civ. Proc. § 468); the appointment of a *guardian ad litem* is for the protection of the infant, and its omission is an irregularity only and does not go to the jurisdiction of the court to pronounce a judgment. (*Rima* v. *R. I. Works*, 120 N. Y. 433.) If the verdict or decision is in favor of the infant, it is not affected because the infant appeared by attorney instead of guardian. (Code Civ. Proc. § 721.) Neither is there any analogy in cases where a receiver is sued without leave of court; but the party is subject to proceedings for contempt for suing

the representative of the court without leave. The court may remit this punishment in a practical way by granting leave *nunc pro tunc*. (*Di Chiara* v. *Sutherland,* 62 Misc. Rep. 555, and cases there cited.) Plaintiff's counsel, instead of beginning another action after the appointment of the administratrix, saw fit to rest his client's rights on the uncertain proposition that an order of a surrogate can effectively declare that the plaintiff was an administratrix when she was not. Fortunately for her, the time to assert her rights has not yet expired. (Code Civ. Proc. § 1902.)

We also think the verdict excessive. Appreciating fully the fact that there are elements of damage which are not subject to mathematical computation and which rest largely on conjecture, and that the power to assess the damages is vested in the jury (Code Civ. Proc. § 1904), yet it has never been doubted that the court possesses power to correct unreasonably excessive or insufficient awards in cases like this, and it has often been done. The case is one which would naturally appeal to the sympathy of a jury. The decedent was a laborer, or at the best a mechanic, forty-two years of age; he left a wife of thirty-three and four female children, aged respectively eleven, five and three years, and one of fourteen months. He was the sole support of the family and gave his wife twenty-five dollars a week. He had taken out eight or ten patents, but they produced nothing except one then being exploited, and there is no evidence that this has produced any financial returns. The verdict was $49,000. Considering the present worth of the presumed continued support of the family at present figures for decedent's expectancy of life, making all due allowance for other elements of damage such as the paternal care and nurture of his family, and the reasonable possibility of increased earnings, yet the verdict is so far beyond the scale of those amounts which juries are accustomed to award and courts to sustain, that it must be attributed to other causes than a calm survey of the evidence. The reason may be found in the human sympathies with the decedent's family, on the one hand, and the ability to respond to a large judgment of a powerful and wealthy railroad company, on the other.

The order denying the motion to set aside the verdict is reversed, and the motion granted, on the ground that the verdict is excessive, and the judgment is reversed and the complaint dismissed, with costs.

JENKS, P. J., KELLY and JAYCOX, JJ., concurred; PUTNAM, J., concurred to reverse the judgment and dismiss the complaint, but dissented from any attempt to pass upon the amount of the verdict, which fell with the complaint's dismissal.

Order denying motion to set aside the verdict reversed, and motion granted, on the ground that the verdict is excessive. Judgment reversed and complaint dismissed, with costs.