AMY E. MOHRMANN, Appellant and Respondent, v. FREDA M. KOB, as Committee of WILLIAM G. MOHRMANN, an Incompetent Person, et al., Respondents and Appellants.

Argued May 18, 1943; decided November 18, 1943.

*Jacob W. Friedman* and *Oscar Habas* for plaintiff, appellant and respondent. The committee of an incompetent may not maintain an action for divorce. (*Kaplan* v. *Kaplan*, 256 N. Y. 366; *Mainzer* v. *Avril*, 108 Misc. 230; *Gould* v. *Gould*, 141 Misc. 766; *Matter of Babushkin* [*Hirsch*], 176 Misc. 911; *Worthy* v. *Worthy*, 36 Ga. 45; *Birdzell* v. *Birdzell*, 33 Kan. 433; *Garnett* v. *Garnett*, 144 Mass. 379; *Thayer* v. *Thayer*, 9 R. I. 377; *Baker* v. *Baker*, L. R. 5 Prob. Div. 142, 6 Prob. Div. 12; *Mohler* v. *Shank*, 93 Iowa 276; *Bradford* v. *Allen*, 89 Ill. 78; *Hollis* v. *Drew Theological Seminary*, 95 N. Y. 166; *People* v. *Hawkins*, 157 N. Y. 1; *Glaser* v. *Glaser*, 276 N. Y. 296; *Matter of Rhinelander*, 290 N. Y. 31; *Matter of Hill*, 264 N. Y. 349.) The commission of adultery by a wife does not relieve a husband of the obligations of a separation agreement, particularly when the terms provide for payments until divorce. (*Randolph* v. *Field*, 165 App. Div. 279; *Egan* v. *Egan*, 240 App. Div. 714; *Hann* v. *De Freest*, 178 N. Y. S. 414; *Fearon* v. *Earl of Aylesford*, 14 Q. B. Div. 792; *Sweet* v. *Sweet*, [1895] 1 Q. B. 12; *Dixon* v. *Dixon*, 24 N. J. Eq. 133; *Galusha* v. *Galusha*, 116 N. Y. 635; *Waddey* v. *Waddey*, 290 N. Y. 251.)

*Edwin D. Kenyon* for defendants, respondents and appellants. The Appellate Division erred in affirming the order of Special Term striking the fourth affirmative defense which alleges the right of defendant incompetent to an absolute

divorce as not alleging facts sufficient to constitute a defense. (*Kaplan* v. *Kaplan,* 256 N. Y. 366.) The plaintiff has forfeited her rights by the terms of the very agreement sued upon. To prevent an incompetent from defending himself and his estate is against public policy. An incompetent is a ward of the courts and both he and his property should be protected. (*Kaplan* v. *Kaplan,* 256 N. Y. 366.) A separation agreement does not affect the marital status of the parties and is not a bar to an action for a divorce. (*Clark* v. *Fosdick,* 118 N. Y. 7.) The Appellate Division erred in affirming the Special Term which declared as a matter of law that the fourth affirmative defense was not as such sufficient but should stand merely as a counterclaim. (*Walter* v. *Walter,* 217 N. Y. 439.) There is no theory of public policy on behalf of plaintiff to be subserved in this action.

LEWIS, J. This appeal presents for decision a question expressly reserved by the opinion in *Kaplan* v. *Kaplan* (256 N. Y. 366). May an action for absolute divorce be maintained by the committee of an insane husband against the latter's wife?

The marriage of the plaintiff, Amy E. Mohrmann and William G. Mohrmann, on February 16, 1916, was followed after a brief interval by a separation of the parties. On June 1, 1916, while living apart, they entered into a separation agreement under which the husband agreed to pay his wife a fixed sum each month for her maintenance and support. The husband conformed with the agreement until a date in 1921, when the required monthly payments ceased. By the present action the plaintiff-wife seeks to recover a sum in excess of $5,000 alleged to be due from her husband under the agreement for her maintenance from December 1, 1921, to October 31, 1941. The separation agreement upon which the action is based provides in part that — " If the party of the second part [the wife] shall commit any act which shall entitle party of the first part to a divorce under the Laws of the State of New York, then *upon such divorce being obtained* the provisions herein shall be null and void." (Emphasis supplied.)

The defendant's answer, after admitting allegations in the complaint that on July 16, 1923, the plaintiff's husband, William G. Mohrmann was adjudged to be an incompetent person, pleads

a number of affirmative defenses and counterclaims. Upon this appeal we are concerned solely with the fourth affirmative defense and counterclaim which alleges in substance that between June 1, 1916, and the commencement of this action the plaintiff lived in adultery with a man who, during such relationship, became the father of " several " children born to the plaintiff. In addition there are pleaded allegations appropriate to an action for absolute divorce. (Civ. Prac. Act, §§ 1147, 1150, 1153.)

At Special Term, where the defendants responded to a motion by the plaintiff to strike from the answer several defenses and counterclaims, the fourth affirmative defense and counterclaim was stricken. The Appellate Division agreed with Special Term that the allegations of the fourth affirmative defense and counterclaim are insufficient in law as a defense but ruled that such allegations are legally sufficient to plead a counterclaim and modified the order accordingly. Upon granting to the plaintiff and the defendants separate motions for leave to appeal the Appellate Division certified the following questions for our decision: For the defendants — " In so far as the Fourth Affirmative Defense contained in defendants' answer is concerned, was the order properly made? " For the plaintiff — " In so far as the counterclaim is concerned, was the order properly made? "

At the outset it should be noted that we are not dealing with the ordinary matrimonial action in which a defendant spouse interposes a counterclaim for divorce. (Civ. Prac. Act, § 1168.) Here the plaintiff's action is for money alleged to be due since 1921 under a separation agreement made in 1916 when, we may assume, both parties were competent and a valid marriage existed. By the fourth affirmative defense and counterclaim the defendants have pleaded facts upon which demand is made in behalf of the incompetent husband for an absolute divorce from the plaintiff. However, the demand for relief, predicated upon allegations found in the fourth affirmative defense and counterclaim, is — " that the defendant incompetent and the plaintiff be divorced and that their marriage be dissolved, and that such decree be entered *nunc pro tunc* as of the 1st day of June, 1916." The defendants thus invoke the judicial process in 1941 to abrogate a valid marriage *nunc pro tunc,* as of June 1, 1916, because of the misconduct by the plaintiff wife alleged to have occurred on or since the latter date.

The function of orders *nunc pro tunc* is to correct irregularities in the entry of judicial mandates or like procedural errors. (*Merrick* v. *Merrick*, 266 N. Y. 120, 122; *Guarantee Trust & Safe Deposit Co.* v. *Philadelphia, Reading & N. E. R. R. Co.*, 160 N. Y. 1, 7.) "When a ruling has in fact been made but is improperly evidenced by a defective mandate, or by no mandate at all, an appropriate and suitable order or judgment which manifests the existence of a determination may subsequently be granted to take effect as of the date of such determination." (*Merrick* v. *Merrick, supra*, p. 122.) However, an order *nunc pro tunc* may not serve to record a fact, such as a divorce, as of a prior date when the fact did not then exist. "A court has no power to have a new order or ruling so entered, thus bringing into the record an element which did not previously exist. The facts must exist, and then if the record of them is imperfect or incomplete, it may be amended, but if the record shows the actual facts then no order can be properly made changing them so as to take the place of an act that was required to be previously performed. While a court may record an existing fact *nunc pro tunc*, it cannot record a fact as of a prior date when it did not then exist." (*Guarantee Trust & Safe Deposit Co.* v. *Philadelphia, Reading & N. E. R. R. Co., supra*, p. 7; *Stock* v. *Mann*, 255 N. Y. 100, 103.)

In the present case no decree of divorce had been granted in 1916. Presumably a valid marriage between the plaintiff and William G. Mohrmann then existed. Indeed the plaintiff alleges in her complaint and the answer admits that such marriage took place on February 16, 1916, and " that the plaintiff and defendant William G. Mohrmann were at all times and still now (*sic*) are wife and husband."

If we rule, as did the Appellate Division, that the counterclaim now asserted in the incompetent's behalf is sufficient in law as a pleading and the demand for relief thereunder is granted to the defendants, such an adjudication by an order *nunc pro tunc* would lead to the dissolution as of June 1, 1916, of a marriage which, upon conceded facts then existing, was valid. An order *nunc pro tunc* may not be put to such use.

We agree with Special Term and the Appellate Division that the allegations in the fourth affirmative defense and counterclaim upon which the defendants now seek an absolute divorce in behalf of the incompetent are not sufficient in law to consti-

tute an affirmative defense to the plaintiff's action. (*Galusha v. Galusha,* 116 N. Y. 635, 643–645 and see *Randolph v. Field,* 165 App. Div. 279, 283.) Such an affirmative defense by the defendants gains no support from the separation agreement, quoted in part above, which by its own terms becomes " null and void " only " upon such divorce being obtained ".

There remains the question whether the allegations in the fourth affirmative defense and counterclaim are sufficient in law to plead a counterclaim for absolute divorce — not effective *nunc pro tunc* as of June 1, 1916, but as of the date of the judgment herein.

In *Kaplan v. Kaplan (supra),* where the ruling was that an action for *separation* may be brought by an insane person through her guardian *ad litem,* it was pointed out in the opinion (per LEHMAN, J., p. 370) that " before the statutory action for an absolute divorce was created, actions for separation or limited divorce might be maintained in behalf of an incompetent. In such actions the relief which may be granted is based upon the continued existence of the marriage tie." In the present case, however, the counterclaim seeks an absolute divorce involving the dissolution of a valid marriage which was concededly entered into upon the free consent of both parties.

Unlike the statutory situation in Massachusetts and Rhode Island (see Annotated Laws of Massachusetts, vol. 6, ch. 208, § 7, and *Garnett v. Garnett,* 114 Mass. 379, 380, 381; *Cowan v. Cowan,* 139 Mass. 377, 378, 379; *Thayer v. Thayer,* 9 R. I. 377), we find nothing in the statutes governing divorce in this jurisdiction (Civ. Prac. Act, art. 68) which by express statement or by reasonable inference may be construed to authorize the committee of an insane person to institute an action designed to abrogate the relationship thus created. The State has a vital interest in the preservation of the marriage status — an interest which the Legislature has guarded jealously by the enactment of those statutes which govern divorce. We think the ruling of the Appellate Division in this case goes beyond the letter of those statutes, which are declaratory of the public policy of this State as it relates to divorce, and thus invades a field reserved exclusively for the legislative function.

We know that one of the chief factors to be considered in dealing with the inception of the marriage relation is the volition of

the two parties involved. Of no less importance is volition where that relationship is dissolved. Adultery does not *ipso facto* dissolve a marriage. There is eminent authority for the statement that — " Though the fact of adultery be made out, it does not follow, as a matter of course, that a divorce is to be awarded; for the remedy by divorce is purely a civil and private prosecution, under the control and at the volition of the party aggrieved, and he may bar himself of the remedy, in several ways, by his own act." (2 Kent's Commentaries [14th ed.] pp. 100, 101.)

It is a matter of choice by the innocent party who suffers the ignominy of unfaithfulness by a spouse, whether the judicial process will be set in motion to bring about a severance of the marriage tie because of such infidelity. That choice may depend upon a variety of circumstances peculiar to each case. We mention only two: the injured party may choose to give the errant spouse the benefit of condonation — which, significantly, remains in this State a statutory defense to an action for absolute divorce (Civ. Prac. Act, § 1153, subd. 2); or, because of religious affiliation or for other reasons which satisfy the demands of good conscience, the injured spouse may regard the bond of marriage as indissoluble. In any event the choice thus to be exercised is a right of election which is personal to the injured spouse.

It has been suggested that the authority granted to the committee of the property of an incompetent person by section 1377 of the Civil Practice Act is broad enough in scope to include an action for divorce on behalf of the incompetent. We think that when the Legislature by section 1147 of the Civil Practice Act limited to " a husband or wife " the right to " maintain an action against the other party to the marriage to procure a judgment divorcing the parties and dissolving the marriage by reason of the defendant's adultery ", the statutory restriction thus placed upon the right to bring such an action was not relaxed by the provisions of section 1377. The committee of the property of an incompetent has the duty of protecting the property of his ward and for that purpose has been given by section 1377 a general power to maintain in his own name " any action * * * which the person with respect to whom he is appointed might have maintained if the appointment had not been made." A statute conferring upon the committee of the property of an incompetent a general power should not be con-

strued to include the right to choose for the incompetent whether or not to ask the courts to dissolve the marriage tie in order to free the incompetent from its incidental obligations. It is our view that when the Legislature by section 1377 authorized the committee of the property of an incompetent person to bring '' any action or special proceeding '' in behalf of the incompetent, the use of the word '' any '' did not include an action for divorce which the Legislature has always treated separately and completely. (Civ. Prac. Act, art. 68; *Erkenbrach* v. *Erkenbrach,* 96 N. Y. 456, 463; *Johnson* v. *Johnson,* 206 N. Y. 561, 565; *Waddey* v. *Waddey,* 290 N. Y. 251, 253.)

An analogous situation, which also involves a personal right in which the element of volition is implicit, is the right of election granted to a surviving husband or wife to take an intestate share of the estate of a deceased spouse contrary to the terms of the decedent's will. (Decedent Estate Law, § 18.) The right to such an election was granted by the Legislature (L. 1929, ch. 229) at a time when section 1377 of the Civil Practice Act was effective. If the Legislature had intended the scope of section 1377 to be as broad as has been suggested during our consideration of the present case there would have been no necessity to make special statutory provision by which the right of election in behalf of an incompetent might be exercised. That the Legislature did not so regard the scope of section 1377 is fairly to be inferred from the fact that when it was intended to grant in behalf of an incompetent spouse the right to make such an election the lawmakers, by express language, directed that '' the election as herein provided  *  *  *  may be made in behalf of an incompetent when authorized by the supreme court.'' (Decedent Estate Law, § 18, subd. 6.) With reference to the authority of a committee of the property of an incompetent person under section 1377 of the Civil Practice Act, to institute in behalf of an incompetent an action for the annulment of a marriage, see *Walter* v. *Walter* (217 N. Y. 439, 441–443).

In the present case, where the aggrieved spouse is an insane husband bereft of the ability to make intelligently the choice whether or not to seek a dissolution of his marriage, the fact is pressed upon us that unless a cause of action for divorce may be pleaded in his behalf by his committee, the plaintiff wife may subject him to grave injustice. The argument carries strong

appeal but is more properly to be addressed to the Legislature. Until that body has enacted a statute which expressly or by clear implication authorizes a committee of an insane person to make that choice, the courts may not assume to grant that power. (See *Mainzer* v. *Avril,* 108 Misc. 230, 232; *Gould* v. *Gould,* 141 Misc. 766, 768, 769; *Matter of Babushkin [Hirsch],* 176 Misc. 911, 912, 913; *Stevens* v. *Stevens,* 266 Mich. 446, 449; *Birdzell* v. *Birdzell,* 33 Kan. 433, 435, 436; *Worthy* v. *Worthy,* 36 Ga. 45, 46, 47; *Mohler* v. *Shank's Estate,* 93 Iowa 273, 277–280; *Dillion* v. *Dillion,* 274 S. W. [Tex.] 217, 218–220; *Higginbotham* v. *Higginbotham,* 146 S. W. 2d 856 [Mo.]; 2 Bishop on Marriage, Divorce and Separation [1891 ed.], §§ 523–525; 27 C. J. S., Divorce, § 89; 17 Am. Juris. pp. 290, 291, § 272; 70 A. L. R. 964; 9 R. C. L., Divorce and Separation, § 204.) We have not overlooked decisions to the contrary in foreign jurisdictions: *Campbell* v. *Campbell,* 5 So. 2d 401 (Ala.); *Baker* v. *Baker,* 5 Prob. Div. 142, 152, L. R. 1879–1880, Prob. Div. 142; affd. 6 Prob. Div. 12, L. R. 1881, Prob. Div. 12 (England).

A suggestion has also been made that the rights of the incompetent husband may be better protected by the interposition in his behalf of a *partial* defense in which are pleaded facts, including the husband's incompetency, which have brought about a condition which it is said defeats the expressed intention of the parties that the separation agreement shall become null and void upon the commission by the wife of an act of adultery which the husband successfully asserts as a ground for divorce. The validity of such a partial defense is not a subject which we may consider upon this appeal wherein the limits of our inquiry are fixed by questions certified by the Appellate Division. "The questions which are certified limit the power of this court on review to answer such questions and no others." (*Bowlby* v. *McQuail,* 240 N. Y. 684, 687. And see *Grannan* v. *Westchester Racing Ass'n,* 153 N. Y. 449, 459; *Matter of McDonald,* 211 N. Y. 272, 276.)

The order of the Appellate Division should be reversed and that of the Special Term affirmed, without costs. The question certified on the defendant's appeal is answered in the affirmative. The question certified on the plaintiff's appeal is answered in the negative.

THACHER, J. (dissenting). This is an action brought by a wife against her husband (now an incompetent) and his committee to recover payments due under a separation agreement made in 1916. The agreement reads in part as follows: " If party of the second part [wife] shall commit any act which shall entitle party of the first part [husband] to a divorce under the Laws of the State of New York, then upon such divorce being obtained the provisions herein shall be null and void."

The defendant husband was adjudged incompetent in 1923. As a " Fourth Affirmative defense, and as and by way of a counterclaim," defendants have alleged that since the execution of the separation agreement the plaintiff has lived and still is living in open, continuous and notorious adultery with one who is the father of several children born to her. Other facts essential in an action for divorce are alleged. On plaintiff's motion Special Term struck out these allegations as insufficient in law to constitute either a defense or a counterclaim. The Appellate Division, Second Department, has modified the order of Special Term by permitting these allegations to stand as a counterclaim but not as a defense.

The case is here by leave of the Appellate Division, which upon the appeal of the defendants certified the question: " In so far as the Fourth Affirmative Defense contained in defendants' answer is concerned, was the order properly made? " Upon the plaintiff's appeal the question certified is: " In so far as the counterclaim is concerned, was the order properly made? "

Civil Practice Act section 1377 provides in part as follows: " A committee of the property may maintain in his own name, adding his official title, any action or special proceeding which the person with respect to whom he is appointed might have maintained if the appointment had not been made."

In spite of this statutory language, the court has concluded that an action for divorce may not be maintained in behalf of the incompetent. In this conclusion I cannot concur. The opinion of the court correctly points out that nothing in the statutes covering divorce expressly or by reasonable inference authorizes the committee of an incompetent person to institute such an action, and the rule which has been generally accepted in other jurisdictions is that without express statutory language authorizing such action by committees for incompetents, such

authority will not be implied. But here nothing is left to implication. The statutory language is specific, and expressly includes '' any action or special proceeding '' which the incompetent '' might have maintained if the appointment '' of the committee '' had not been made.'' Surely it may not be inferred that this specifically all-inclusive language does not in terms include an action for divorce, or any other matrimonial action such as an action for separation. (See *Kaplan* v. *Kaplan,* 256 N. Y. 366.) Nor may we impute to the Legislature ignorance of the plain meaning of simple words.

The authorities in other states, cited in the opinion of the court, some holding that the committee or next friend may not bring such an action in behalf of an incompetent and some holding the other way, have arisen under statutes differing in terms, none of which, so far as the opinions disclose, expressly granted authority to bring any action or proceeding which the incompetent himself might have brought if he had not been declared incompetent.

None of these decisions goes further than *Dillion* v. *Dillion* (274 S. W. 217, Tex. Civ. App. 1925). In that case the statute employed general terms broad enough to include an action for divorce but did not add words indicating that every action which the incompetent could bring might be brought by his committee. Many of the cases predicate decision upon inferences of legislative intent drawn from the nature of an action for divorce. Such inferences fail if the statutory language clearly expresses a deliberate intent to include every action or proceeding which the incompetent could have brought if competent. Such intent, clearly expressed in our statute, is made clear in some statutes by naming the committee in connection with the procedure for obtaining a divorce. This is the case in Rhode Island and Massachusetts. (*Thayer* v. *Thayer,* 9 R. I. 377; *Cowan* v. *Cowan,* 139 Mass. 377.) But when the Legislature of this State authorized the committee of an incompetent to bring any action which the incompetent himself might have brought if he had not been adjudged incompetent, it was not necessary to mention the rule again in outlining the procedure in an action for divorce.

The language of the Civil Practice Act, section 1377, was under consideration by this court in *Walter* v. *Walter* (217 N. Y.

439), where it was contended that a committee of an incompetent was entitled to maintain an action to annul the marriage of the incompetent on the ground of lunacy. It was, however, concluded that the express provision with relation to an action to annul a voidable marriage authorizing relatives, a next friend, and the incompetent after restoration to sanity, to maintain the action, had the effect of excluding the committee, and that the general words of section 2340 of the Code (now the second paragraph of Civ. Prac. Act, § 1377) did not enlarge the specific provisions of sections 1747 and 1748 of the Code (now Civ. Prac. Act, §§ 1137, 1138) which named the persons authorized to maintain the action to annul a voidable marriage. The authority to sue granted in the Civil Practice Act, section 1377, is not so limited in this case. Unless the committee may sue, no one may sue in representation of the incompetent.

The question was expressly reserved in *Kaplan* v. *Kaplan* (*supra,* p. 367) where it was held that an action for a separation might be maintained by an insane wife through her guardian *ad litem*. This language is used in the opinion: " Ordinarily, in the absence of some express limitation, a cause of action in favor of an infant or incompetent, arising either under the common law or conferred by statute, may be prosecuted by a guardian *ad litem* or special guardian. Neither infancy nor insanity deprives a person of the right to appeal to the courts for redress of wrongs or for vindication of asserted rights. It cannot be questioned that an infant may bring an action for a separation through a guardian *ad litem*. Unless from the nature of the cause of action or from other sections of the statute we can find an implication of a contrary legislative intent, then an incompetent spouse may also prosecute such an action through an appropriate officer appointed by the court. Without some basis for such an implication, we may not assume that the Legislature, though providing a remedy by action for the failure of a party to carry out matrimonial obligations, impliedly limited these remedies to a sane spouse."

In his opinion Judge LEHMAN pointed out that the High Court of Justice in England in *Mordaunt* v. *Mordaunt* (L. R. 2 Prob. Div. 103) had held that because of its nature and results an action for divorce could not be maintained against an insane wife, but that that decision was reversed on appeal. (*Mordaunt*

v. *Moncrieffe*, L. R. 2 Scotch & Divorce Appeals [House of Lords] 374.) There it was held that since Parliament by statute provided an action for absolute divorce without any limitation that it might not be maintained against a lunatic, the courts may not impose such a limitation by implication. Referring to this decision, Judge LEHMAN added: " There, as we have said, the action was brought against an insane spouse. The same rule is applied where the action is brought in behalf of an insane spouse. (*Baker* v. *Baker*, L. R. 5 Prob. Div. 142, affd. 6 Prob. Div. 12.) The same question has never been decided by this Court. We are not called upon to decide it now."

Here we not only have no limitation expressed by the Legislature but we have express and emphatic language to the effect that there shall be no such limitation.

In the *Baker* case cited by Judge LEHMAN, the court answered the argument that the wronged spouse had an inherent right to condone the offense, and that therefore a divorce suit could not be commenced without his active volition, by saying (p. 151): " On the other hand it cannot be denied that, if reasons of expediency are to be regarded, great wrong might arise from holding that no proceedings for divorce can be maintained against the adulterous wife of a lunatic. She might be left in possession of property settled on her by her husband, which she and her paramour might enjoy to the exclusion of the lunatic. She might exercise powers of appointment in favour of the paramour or the children of her and his adultery, a spurious offspring might be foisted upon her husband and his family, by which the devolution of estates or titles might be diverted in favour of illegitimate objects. These evils would only be avoided by a dissolution of the marriage."

The worst of these consequences is admittedly present in this case. But in addition it should be said that this court is now asked to permit the plaintiff and her paramour to enforce the obligations of the separation agreement to pay her a monthly allowance until death shall dissolve the marriage relationship and she shall have received her statutory share of his estate, unless her husband recovers his sanity and puts an end to such dirty business by an action for divorce.

Such consequences of a limitation upon the expressed intent of the Legislature preclude the application of the rule most

often applied to criminal statutes, that general terms should be limited where the literal application of the statute would lead to extreme or absurd results, and where the legislative purpose gathered from the whole act would be satisfied by a more limited interpretation. (*Sorrells* v. *United States,* 287 U. S. 435, 447, 448.) Here the limitation imposed by the court produces absurd consequences and flagrant injustice, and contradicts the specific language of the statute.

The court having concluded that there can be no suit for divorce, the resulting situation should constrain decision sustaining the sufficiency of the defense because the husband's insanity has deprived him of the right to maintain an action for divorce. I have no doubt as to the sufficiency of the allegations to constitute a partial defense upon the ground that his obligation, defined and limited by the terms of the agreement, was conditioned upon his right to procure a divorce upon proof of the adultery which is admitted by the plaintiff. He made no promise to pay the plaintiff money which could not be terminated by procuring a divorce. His promise was conditioned upon the right to bring such a suit and terminate the obligation. If that right has been destroyed by his incompetency, then his promise to pay conditioned upon the right to terminate payments upon procuring a divorce becomes unenforcible insofar as all payments are concerned which would otherwise have been payable after his incompetency was adjudged and during its continuance.

The applicable principle is well stated in the Restatement of the Law of Contracts, volume 1, section 288: " Where the assumed possibility of a desired object or effect to be attained by either party to a contract forms the basis on which both parties enter into it, and this object or effect is or surely will be frustrated, a promisor who is without fault in causing the frustration, and who is harmed thereby, is discharged from the duty of performing his promise unless a contrary intention appears."

In this case the desired effect, clearly expressed in the agreement, was that the husband should pay a monthly allowance to the wife, but should be relieved of any obligation to make such payments if the wife committed acts of adultery and if he, in the exercise of his free will, chose to sue her for divorce and

obtained a decree. This is the exact measure of the obligation as defined by the parties. But if it be true that through no fault of his own the husband has been deprived of his free choice to obtain a divorce and end the obligation, then the desired objective of the parties, as they defined it, is impossible of accomplishment. It was certainly contemplated by the agreement that the opportunity to obtain a divorce upon valid grounds should continue to exist. Its continued existence was the very foundation and condition upon which the promise was made to depend. Under these circumstances I have no doubt that the facts alleged, and admitted, constitute a defense under the authorities.

The rule in the well-known *Coronation* case, (*Krell* v. *Henry*, L. R. [1903] 2 K. B. 740), went far beyond the necessities of this case, for there, quoting *Taylor* v. *Caldwell* (3 B. & S. 826), Vaughan Williams, L. J., said (p. 748): "That case at least makes it clear that ' where, from the nature of the contract, it appears that the parties must from the beginning have known that it could not be fulfilled unless, when the time for the fulfillment of the contract arrived, some particular specified thing continued to exist, so that when entering into the contract they must have contemplated such continued existence as the foundation of what was to be done; there, in the absence of any express or implied warranty that the thing shall exist, the contract is not to be considered a positive contract, but as subject to an implied condition that the parties shall be excused in case, before breach, performance becomes impossible from the perishing of the thing without default of the contractor.' " The court then holds " that the English law applies the principle not only to cases where the performance of the contract becomes impossible by the cessation of existence of the thing which is the subject-matter of the contract, but also to cases where the event which renders the contract incapable of performance is the cessation or non-existence of an express condition or state of things, going to the root of the contract, and essential to its performance."

It was argued there that the rule was limited to conditions expressly mentioned in the contract. The court held that it was not so limited. But in the case under consideration the condition was expressly stated in the contract, and the defendants' obligation was predicated upon the condition.

The principle which should control decision in the case at bar is illustrated most strikingly in cases arising upon bonds and recognizances, where the promise to pay is absolute in terms but is conditioned upon the happening of some event. This court long ago held that in such cases the impossibility of performance of the condition discharged the obligation to perform the promise of payment. (*People* v. *Tubbs,* 37 N. Y. 586. See, also, *People* v. *Cook,* 30 How. Pr. 110; *People* v. *Cushney,* 44 Barb. 118; *People* v. *Bartlett,* 3 Hill 570; *People* v. *Manning,* 8 Cow. 297; *Carpenter* v. *Stevens,* 12 Wend. 589.)

Accordingly, the court having held that the counterclaim is not maintainable, although upon the facts alleged and admitted the husband, if competent, could successfully maintain such an action, it follows that the husband's promise to pay a monthly allowance cannot be enforced during his incompetency, which was adjudged on July 16, 1923. The facts alleged do not constitute a complete defense, since there would be a right to recover payments prior to that date unless barred by the Statute of Limitations, a question with which we are not concerned on this appeal. Under the Civil Practice Act, section 262, the defense was improperly pleaded as a complete defense, but neither court below relied upon this defect in pleading.

For the reasons stated, the order of the Appellate Division should be affirmed, and both questions certified answered in the affirmative without prejudice to defendant to move at Special Term to plead over and allege the matter set up in the " Fourth Defense " as a partial defense.

LEHMAN, Ch. J., LOUGHRAN, CONWAY and DESMOND, JJ., concur with LEWIS, J.; THACHER, J., dissents, in opinion in which RIPPEY, J., concurs.

Ordered accordingly.