## DAINE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 218, Docket 20811.

Circuit Court of Appeals, Second Circuit.

June 2, 1948.

Reese D. Alsop, of New York City (Hunt, Hill & Betts, of New York City, on the brief), for petitioner.

Morton K. Rothschild, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., and Sewall Key and George A. Stinson, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This appeal presents another phase of the issue considered in the case of Smith v. Commissioner, 2 Cir., 168 F.2d 446, decided herewith, namely the deductibility from a husband's gross income in the computation of his income tax of payments made to his wife under an agreement of separate maintenance. The statutes involved, I.R.C. §§ 22(k), 23(u), 26 U.S.C.A. Int.Rev.Code, §§ 22(k), 23(u), enacted in 1942, are quoted in that opinion.[1] As we there held, they make obligatory a decree of divorce or of separate maintenance as a prerequisite to the deductions; in the absence of a formal court decree the husband cannot make them. The addi-

_____
[1] In footnote 1.

tional feature presented in this case (beyond some variation in the type and form of the agreement which does not assist the taxpayer) is the entry of such a formal decree by the New York Supreme Court after the taxable year in question, but nunc pro tunc as of an earlier date.

The deficiency assessed here of $8,863.18 was in the husband's income tax for the calendar year 1943, though it involved his liability for the years 1942 and 1943.[2] The facts which were stipulated may be briefly summarized. On January 1, 1940, the taxpayer and his wife entered into an agreement of separate maintenance whereby he agreed to pay her $900 a month for the full support and maintenance of herself and their child. The payments were to be made in two equal installments on the first and fifteenth days of each month, beginning on January 1. The agreement further provided that it was to be effective for one year from that date, and the husband reserved the right to terminate it on one month's notice, the cancellation to be effective June 30, 1940, or September 30, 1940. Before the expiration of this agreement it was orally extended by the parties for an indefinite period. During the years 1942 and 1943, the taxpayer paid his wife $10,-590 and $12,411.42 respectively. Thus these payments varied from the $10,800 called for by the agreement. This is explained, however, by the fact that in 1942 he had paid some old debts for his wife and accordingly had deducted them from the amount paid his wife, while in 1943 he paid his wife an additional sum to cover the increased taxes required of her because of the inclusion in her taxable income of the payments made to her. After prolonged negotiations, the parties on May 11, 1944, executed an amendatory agreement (which was not put in evidence); and thereafter the wife filed suit for separation from the husband's bed and board. On July 1, 1944, a decree in her favor was rendered by the Supreme Court of the State of New York. In terms it decreed that the parties had been legally separated as of January 1, 1940; and "as incident to this judgment"

it approved the separation agreement of that date, as well as the amendatory agreement of May 11, 1944, which "shall be of full force and effect as though executed by the parties thereto January 1, 1944"; and, finally, it declared that the judgment and decree "shall have the same force and effect" as if entered on January 1, 1940, and that it should be entered by the clerk "Nunc Pro Tunc" as of that date. The taxpayer's wife had included the amounts received from him as taxable income in her returns of 1942 and 1943. In March, 1946, however, she filed claims for the refund of such alleged overpayments. In the present proceedings the Tax Court has sustained the deficiency assessment in a reasoned opinion, 9 T.C. 47, and the taxpayer has petitioned for review.

■ Petitioner contends that §§ 22(k) and 23(u) are to be liberally construed, and accordingly that valid agreements of separate maintenance should be accorded the same treatment as those which are incident to a judicial decree. But this is the argument which we rejected in Smith v. Commissioner, supra. As we pointed out, the language of the sections is clear and definite. Under it a deduction may be allowed only where the payments are made under a decree of divorce or of separate maintenance. An obligation bottomed on an agreement alone is not sufficient. Here at the time of the payments the wife was not legally separated from her husband under a decree of separate maintenance, and the payments were not actually made subsequent to such a decree. And the case is less strong than that of Smith v. Commissioner, supra, since the husband could not have been required to make continued payments under the January, 1940, agreement as orally extended if he did not so choose. For, as we have seen, one of the provisions in that agreement was that petitioner could terminate it on one month's notice. By failing to exercise such option he in effect voluntarily made the payments to his wife. Unless, then, the nunc pro tunc decree changes the situation, the Smith decision is decisive against petitioner.

[2] Due to the change to the "pay-as-you-go" system in 1943, Current Tax Payment Act of 1943, c. 120, 57 Stat. 126, § 6(f), 26 U.S.C.A. Int.Rev.Code, § 1622 note.

■ Petitioner of course relies strongly upon that decree, saying that it, having been entered nunc pro tunc as of January 1, 1940, must be deemed to have been entered as of that date for all purposes. In support of this he makes the argument that the date of effectiveness of such a decree is for all legal purposes the same as though it had been entered originally at the time the event it records actually happened, relying strongly on Kirkbride v. Van Note, 275 N.Y. 244, 9 N.E.2d 852, 112 A.L.R. 243. In that case the administrator of the husband's estate obtained an order modifying a judgment in favor of the wife by annulling the provisions for alimony nunc pro tunc as of the date of her remarriage. The Court of Appeals in affirming reasoned that § 1159 of the N.Y.Civil Practice Act, now renumbered as § 1172-c, made it mandatory that the court modify a judgment directing the payment of support to a former wife whenever she remarried. Furthermore, it need be noted that the order there merely recorded a fact that had actually happened after the entry of the original decree, namely, the remarriage of the wife. Here, on the other hand, the decree attempted to record a decree of separation as of January 1, 1940, when in fact there was no decree of separation until July 1, 1944. We think it clear under the New York cases that an order nunc pro tunc may not serve to record a fact as of a prior date when the fact did not then exist.[3] Mohrmann v. Kob, 291 N.Y. 181, 51 N.E.2d 921, 149 A.L.R. 1274; Stock v. Mann, 255 N.Y. 100, 174 N.E. 76; Merrick v. Merrick, 266 N.Y. 120, 194 N.E. 55; Guarantee Trust & Safe-Deposit Co. v. Philadelphia, R. & N. E. R. Co., 160 N.Y. 1, 54 N.E. 575; Smith v. New York Cent. R. Co., 183 App.Div. 478, 171 N.Y.S. 64; In re Mussi's Guardianship, Sup., 64 N.Y.S.2d 484; Hayes v. Hayes, 184 Misc. 895, 54 N.Y.S.2d 853; Karpuk v. Karpuk, 177 Misc. 729, 31 N.Y.S.2d 769; Dusch v. Dusch, 167 Misc. 449, 4 N.Y.S.2d 49, affirmed 257 App.Div. 909, 12 N.Y.S.2d 252.

■ But even if the petitioner's analysis is correct to the point that under New York law the nunc pro tunc order is completely effective as finally written, that will not aid him here. Although such a decision of the state court may bind the parties in the settlement of their legal rights between themselves, yet the determination of tax consequences is not to be so resolved. The decision of a state court might well turn on elements of estoppel, laches, acceptance of benefits, rights of third parties, and other incidents of a decisive nature as to them, but in no proper sense to be held prejudicial to the federal revenue. Hence it is clear that the retroactive judgments of state courts do not determine the rights of the Federal Government under its tax laws. Eisenberg v. C. I. R., 3 Cir., 161 F. 2d 506, certiorari denied 332 U.S. 767, 68 S.Ct. 76; Sinopoulo v. Jones, 10 Cir., 154 F.2d 648; Loggie v. Thomas, 5 Cir., 152 F. 2d 636; Sewell v. C. I. R., 5 Cir., 151 F.2d 765, certiorari denied 327 U.S. 783, 66 S.Ct. 683, 90 L.Ed. 1010; Sewell v. United States, Ct.Cl., 73 F.Supp. 957.

■■ Nor are Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634, and Blair v. C. I. R., 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, at all pertinent. The former turned to state law merely to determine what was distributable to the beneficiary of a trust, and the latter examined state law to ascertain whether or not a testamentary trust was a spendthrift trust. These affected property rights. What is income is controlled by Federal law. Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; Lusthaus v. C. I. R., 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410; Burk-Waggoner Oil Ass'n v. Hopkins, 269 U.S. 110, 46 S.Ct. 48, 70 L.Ed. 183. See Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731. Here the initial agreement was made long before the statutes were

[3] The belated appointment of a guardian ad litem and the granting of leave nunc pro tunc to sue a receiver where such suits had been forbidden without the consent of the court are not analogous. Smith v. New York Cent. R. Co., 183 App.Div. 478, 171 N.Y.S. 64.

passed. It is one thing to look to state law to determine the meaning and effect of property titles or the incidents of an express trust created by will. It is quite another to regard a state judicial decree as having sufficient force of itself to make a revamped contract both effective and judicially approved as of a date over four years before its actual date in order that its maker may thus obtain the benefits of a just-enacted federal taxing statute. No sovereign is likely to permit its revenue imposts to be set at nought through such retroactive manipulation of state judicial proceedings.

The decision of the Tax Court is affirmed.