Bertram Harnett, J.
Would you believe two young children suing to establish that their parents were never legally married?
This is the story of the Pettas family. According to a proposed complaint, 6-year-old Maria and 10-year-old John, Jr. want the marriage of their parents, John and Lucy, declared a nullity. The children’s uncle George (John’s brother) wants to appear for them as their guardian ad litem. The case comes to court now on George’s motion to be formally appointed guardian. (CPLR 1202; see, generally, CPLR 1201 et seq.)
The complaint asks for a declaration that John’s marriage to Lucy is void. It asserts his previous marriage to his first wife, Arlene, never legally ended. It seems John divorced Arlene in Mexico before marrying Lucy and this action would question the validity of that divorce on the ground of lack of personal jurisdiction.
But, it is not yet the time in this legal contest to decide to whom John is married. We must first determine and identify the players. That brings us back to young Maria and John, Jr. Should the court appoint a guardian for the purpose of bringing this suit in their names? Should we let uncle George do it?
Manifestly, these little children have not made a mature decision to apply to judicial authority for a formal declaration of the invalidity of their parents’ marriage. Some other hand is at work here, and its presence in this unusual action gives us pause. If it appears that a suit is brought not in the best interest of the children, but rather in someone else’s interest in the children’s names, the court must block it. The court is ultimate legal guardian of the children’s interests. (Walter v Bernheimer, 225 App Div 343.)
Questions of marriage, divorce, and family relationship are highly personal and may have significant impact on the children’s emotional health and character as well as their material support. We usually appoint guardians ad litem in *957 negligence or contract actions or some other situation where only money is at stake. Or, we may appoint a guardian in family litigation where the young may be trampled by warring parents. But, today’s action is not for physical or legal injuries, and the family battle, if it began, would have been brought by the children, and not in spite of them.
A child’s psychological best interest is at least as important, yet harder to chart, as his or her economic interest. A guardian’s performance in money matters can be watched and evaluated in objective terms. This is not so in family matters. Only under careful judicial scrutiny should guardians, committees, or any such representatives be allowed to tamper with family relationships in the name of the ward’s best interest. (See Mohrmann v Kob, 291 NY 181; Kaplan v Kaplan, 256 NY 366.)
The proposed complaint here is drawn around economic considerations. It implies that the children will enjoy greater social security benefits now and greater estate benefits later if their father John is declared married to Arlene and not to their mother Lucy. If there will be any economic advantage for the children, it is not yet apparent to the court. All we can see is two young children who will grow up with the social stigma of unmarried parents. No gain is demonstrated.
A guardian’s primary duty is to act in his or her ward’s interest. As we read the record in this case, the ward’s interest is in not bringing the suit at all. There is no point in appointing a guardian for the purpose of not bringing an action. Accordingly, the motion to appoint a guardian for the infant plaintiffs is denied.
Moreover, George Pettas would not be an appropriate guardian here in any event. He has not supplied the necessary affidavit "showing his ability to answer for any damage sustained by his negligence or misconduct.” (CPLR 1202, subd [c].) But, the court’s concern goes beyond this. Circumstances suggest his motive here may be something quite different than a desire to help the children. This action to declare that Lucy and John were never legally married is intimately related to another action in which Lucy is suing John for divorce. In that action, John defends claiming he never has been married to Lucy by virtue of his prior invalid decree. But, he may be estopped by this subsequent marriage from himself raising this issue. (Van Dover v Van Dover, 247 App Div 813; Merino v Merino, 56 Misc 2d 854.) It may be as Lucy suggests, John is *958 the moving figure in George’s action here, trying to establish his nullity point collaterally when he could not do it directly. This possibility is enough to warrant that any guardian who would be appointed be an objective outsider to the family. John’s brother George is in appearance too close to the situation to approach this case with the necessary dispassionate eye. (See Kemmelick v Kemmelick, 114 Misc 198.)
Young children are people too helpless to protect their own rights. When necessary, the law allows the court to give them protection through the office of guardian. The court must be alert that the office is not used to jeopardize the rights it was meant to protect.