Meyer, J.
(dissenting). Because the State received notice of the cause of action against it in the form of a claim served upon it by the “intended Administratrix” 13 days earlier than the governing statute indicated it should be, persons whom the State intended to benefit by waiving its sovereign immunity and permitting actions to be brought against it in the Court of Claims are being deprived of all recompense. Since I agree with Lee Loevinger, former Associate Justice of the Minnesota Supreme Court, that “The law, in its most general sense, represents society’s effort to be rational in controlling the relations among men” (Loevinger, Dogmatism and Skepticism in Law, 38 Minn L Rev 191, 212 [and, I would add, between men and their governments] ), since I cannot conceive that the Legislature meant so readily to take away with one hand what it was giving *945 with the other, and since the formalism [1] which underlies the precedents on which the majority’s ruling is based no longer guides the law, I respectfully dissent.
The claim made was for personal injury to and the wrongful death of Robert M. Jones, age 19, who was assaulted and stabbed on April 22, 1975 by a former patient at Bronx State Hospital of known vicious propensities, who, it is claimed, was released prematurely. Robert Jones died on April 23, 1975, survived by his mother, father and three brothers. The claim as served and filed on July 16, 1975 was captioned “Corrine Jones, individually and as intended Administratrix of the Estate of Robert Michael Jones, deceased.” Corrine Jones, Robert’s mother, was not appointed administratrix, however, until July 29, 1975.
Service and filing were acknowledged by both the clerk of the Court of Claims and the Attorney-General’s office by letters noting that the claim was being filed “subject to whatever legal objections may apply thereto.” The claim was not again filed and served after July 29,1975, nor was any motion made by the Attorney-General’s office until the case was called for trial on September 19, 1977, although a demand for particulars was made in July, 1976 and was answered.
Having played possum until the time for reservice of the claim by the officially appointed administratrix had passed (compare Code of Professional Responsibility, EC 7-14), the office of the Attorney-General moved at the opening of the trial to dismiss for lack of jurisdiction. The motion to dismiss was countered by a cross motion to amend the. claim as filed by striking the word “intended”. The Court of Claims, “satisfied that the defendant has been properly and timely advised of claimant’s cause,” denied the State’s motion to dismiss and, acting pursuant to the power granted by subdivision 8 of section 9 of the Court of Claims Act to amend and correct any process or claim, granted the motion to amend. The Appellate Division, concluding that “Section 10 of the Court of Claims Act is a jurisdictional prerequisite to maintaining an action in the Court of Claims,” reversed and dismissed. While there clearly was precedent for *946 the Appellate Division’s ruling, I conclude that that precedent was egregiously wrong and should now be overruled by us.
Section 10 of the Court of Claims Act precedes its various subdivisions with the proscription that “No judgment shall be granted in favor of any claimant unless such claimant shall have complied with the provisions of this section applicable to his claim.” The direction that judgment not be entered is not jurisdictional in concept. By itself, therefore, section 10 does not establish a jurisdictional condition precedent. The jurisdiction of the Court of Claims is, however, delimited in section 9 of the act which provides that “The court shall have jurisdiction * * * 2. To hear and determine a claim of any person, corporation or municipality against the state * * * for the torts of its officers or employees * * * providing the claimant complies with the limitations of this article.” Thus, only to the extent that the subdivisions of section 10 impose “limitations” on the right of action can it be said that the Legislature established as a jurisdictional condition precedent that a claim filed by the person who is thereafter in fact appointed personal representative of the decedent is, because prematurely filed, outside the court’s power to consider. Examination of the pertinent subdivisions of section 10 makes clear that the Legislature had no such intent.
If we turn first to subdivision 2 and consider it by itself, we find that it provides: “A claim by an executor or administrator of a decedent who left him or her surviving a husband, wife or next of kin, for damages for a wrongful act, neglect or default, on the part of the state, by which the decedent’s death was caused, shall be filed within ninety days after the appointment of such executor or administrator unless the claimant shall within such time file a written notice of intention to file a claim therefor in which event the claim shall be filed within two years after the death of the decedent. In any event such claim shall be filed within two years after the death of the decedent.” The only inescapable requirements of that subdivision are, first, that a claim be made, second, that it be made by an executor or administrator, and third, that it be made within 90 days after appointment of the executor or administrator but in *947 any event within two years after the date of death of decedent. The only suggestion in the language of the section that the Legislature placed any significance on the order in which those three steps occurred is the word “after”, but clearly a claim filed prior to the appointment of the personal representative has, in relation to the only event of significance to the State — decedent’s death — been filed “within ninety days after” such appointment (cf. Matter of Johnson v State of New York, 49 AD2d 136).
Moreover, the logic of what the Legislature sought to accomplish by the 90-day provision suggests that it did not regard service before appointment as talismanic. In requiring the filing of a claim for wrongful death by “an executor or administrator” the Legislature, aware that some time would be required to obtain such an appointment, made the filing requirement run from the time of appointment rather than, as for other personal injury claims (see subds 3, 3-a), “within ninety days after the accrual of such claim.” Thus, in providing that a death claim could be filed within 90 days after appointment of the personal representative the Legislature sought to extend to the beneficiaries of a death claim extra gradee, not to impose upon them an additional, and jurisdictional, condition precedent to the making of a claim.
The conclusion that the Legislature did not conceive the order of filing and appointment to be jurisdictional is reinforced by what was subdivision 5 (now subd 6) of section 10. More will be said hereafter about the first sentence of the subdivision; for the moment I consider only the significance of the first sentence of the subdivision in relation to its next to last. Those two sentences, as they read when Robert M. Jones was assaulted, provided:
“A claimant who fails to file a claim or notice of intention, as provided in the foregoing subdivisions, within the time limited therein for filing the notice of intention, may, nevertheless, in the discretion of the court, be permitted to file such claim at any time within two years after the accrual thereof, or in the case of a claim for wrongful death within two years after the decedent’s death.
* * *
“No such application shall be granted if the court shall *948 find that the state has been substantially prejudiced by the failure of the claimant to file such notice of intention within the time limited therefor.”
Those sentences show that the Legislature could not have considered anything so lacking in significance as the order of filing and appointment to be jurisdictional, for their language is broad enough to endow the court with discretion (for the exercise of which it had to have jurisdiction) to ignore the failure to file a notice of intention, provided only that the claim be filed within two years of the date of death, the criterion for exercise of discretion being simply whether the State had been prejudiced. Against that grant of discretion it is little short of ludicrous to suggest that the Legislature intended to defeat the claim of decedent’s survivors when the State has had full (indeed, extra) notice and opportunity to investigate and makes no claim of prejudice (preferring instead to hide behind the rule that prejudice need not be shown in the absence of jurisdiction) .[2]
*949 It can, perhaps be argued that the grant of discretion referred to should not be taken as evidence of legislative intent in the context of the present case because it speaks only to the failure to file and not to the situation of the present case, i.e., a filing which is a “nullity”, not followed by a further filing, after the incapacity was removed, within two years after death. The contention would be that because the subdivision does not include any language concerning relation back (compare CPLR 203, subd [e])or permitting amendment in order to validate the “invalid” claim on the same discretionary factors that authorize the filing of a late claim there is no authority to act in the circumstances of the present case. The short answer, in my view, is subdivision 8 of section 9 of the act (part of the Legislature’s explication of the court’s jurisdiction), empowering it “to vacate, amend, correct, or modify any process, claim, order or judgment, in furtherance of justice for any error in form or substance” (emphasis supplied). Short of ritualistic incantations about “jurisdiction” and “nullity” concepts, as to which more is said below, it seems clear when sections 9 and 10 are read together that the Legislature never conceived that a claim such as plaintiff’s would be barred on jurisdictional or any other grounds.
What has so far been said makes evident that based on any reasonable assessment of what the Legislature intended viewed in terms of what it did, it did not conceive of the appointment of a personal representative as jurisdictional. What has happened rather, as not infrequently happens when prior judicial concepts are overturned by legislative action, is that the scope of the change has been judicially restricted by importing into it other prior judicial concepts of which the Legislature, it is said, must be deemed to have been aware. Here two such concepts are at work, of “nullity” and of “jurisdiction”. The Legislature did not intend to give the Court of Claims “jurisdiction” in a case such as this, it is said, because it called for the filing of a claim by an executor or administrator, a representative who has no authority to act until he is appointed officially, whose acts are, therefore, a “nullity”, and cannot be rectified because a nunc pro tunc order cannot retroactively establish as a *950 fact that which did not exist at the earlier date (Smith v New York Cent. R. R. Co., 183 App Div 478, 480-481). The answer is that we have recognized in Nuernberger v State of New York (41 NY2d 111, 117) “the elastic and versatile definition and use of the term ‘jurisdiction’ ”, and in George v Mt. Sinai Hosp. (47 NY2d 170, 176, 177) and Caffaro v Trayna (35 NY2d 245, 249, n 1) have refused to let the “nullity” of an action and the necessity of resorting to legal fiction, respectively, stand in the way of litigation of a claim that would otherwise be lost,, stating in Caffaro (at p 251) that “only unfairness to defendant or inescapable statutory mandate should foreclose assertion of” a wrongful death claim. There being neither unfairness, nor, as above demonstrated, inescapable statutory mandate in the present case, we should abandon our myopic concentration[3] on concepts not within any demonstrable legislative purpose and hold the order of the Court of Claims amending the caption and denying the motion to dismiss valid and proper.
The more so is this the case when our prior contrary holdings have resulted in substantial reluctance by courts below to follow the precedents (Lurie v State of New York, 73 AD2d 1006 [filing with Attorney-General but not with the clerk held jurisdictional]; Matter of Welch v State of New York, 71 AD2d 494 [omission to file notice of intention with the clerk, although it was filed with the Attorney-General and the claim was filed with both the clerk and the Attorney-General held jurisdictional]; Matter of Johnson v State of New York, 49 AD2d 136 [filing of notice of intention before appointment of administratrix followed by filing of claim by administratrix more than 90 days after appointment but within two years of death held not jurisdictional] ; see, also, Blauvelt v State of New York, 160 Misc 319, 321 [Ackerson, J., dissenting], affd 250 App Div 834; Gonzalez v State of New York, 69 Misc 2d 432; Shaw v Fairyland at Harvey’s, 45 Misc 2d 493, affd on other *951 grounds 26 AD2d 576). To that reluctance may be added the fact that our most recent cases on the subject are distinguishable, - though at least one, relatively recent one, is not. In Smith v State of New York (41 NY2d 1063), relied on by the Appellate Division, we held that a claim filed by a parent within the two-year period, limited letters not, however, having been granted to her until after the two-year period expired, was jurisdictionally defective because (at p 1065) “A'claim for wrongful death against the State can only be filed by a proper representative of the decedent, and the statute requires that the claim be filed within two years after the death of the decedent.” Similar reasoning governed the results in Ratka v St. Francis Hosp. (44 NY2d 604, 611) and Goldberg v Camp Mikan-Recro (42 NY2d 1029, 1030). The present case differs from Smith in that plaintiff was appointed administratrix within the two-year period, indeed, within 13 days after the claim was served and filed.
The case which cannot be distinguished is Lewis v State of New York (25 NY2d 881, affg 26 AD2d 878), decided by us in July, 1969. There decedent died on August 22, 1962, claimant filed her claim on November 17, 1962 but was not appointed administratrix until January 17, 1963. At trial in April, 1965 claimant moved at the close of her case to conform the pleadings to her proof and the State moved to dismiss for lack of jurisdiction. The Appellate Division reversed the Court of Claims judgment in favor of claimant. Before us the State argued that there was a jurisdictional defect which could not be cured after the expiration of two years from decedent’s death by conforming the pleadings. Departure from such prior precedents is, as I noted dissenting in Matter of Higby v Mahoney (48 NY2d 15, 25), “not only authorized but required when the court is ‘satisfied, in the first place that they were wrongly decided, and in the second place, that less mischief will result from their overthrow than from their perpetuation’ (Black, The Law of Judicial Precedents [1912 ed], p 10)”; see Matter of Eckart (39 NY2d 493, 498-499). As Judge Fuld, as he *952 then was, put it in Bing v Thunig (2 NY2d 656, 667), when “adherence to precedent offers not justice but unfairness, not certainty but doubt and confusion, it loses its right to survive, and no principle constrains us to follow it” (accord Moragne v State Mar. Lines, 398 US 375, 405). The more so is that true when, as here, the unjustified rule is a judicial gloss on statutory language.
There exists a further reason for reversal of the Appellate Division’s order. As already noted, by the time this case came on for trial in 1977 the first sentence of subdivision 6 of . section 10 had been amended to authorize a Court of Claims Judge in the exercise of discretion to permit a claimant who had failed to file a claim or notice of intention within two years after decedent’s death “to file such claim at any time before an action asserting a like claim against a citizen of the state would be barred under the provisions of article two of the civil practice law and rules.” As we held in Caffaro v Trayna (35 NY2d 245, 250, supra), the combination of EPTL 11-3.3 (subd [b], par [2]) and CPLR 203 is sufficient to permit a personal representative who has brought a survival action to amend his complaint in an action against a defendent other than the State to include a cause of action for wrongful death of a decedent who died while the personal injury action was pending, notwithstanding that the motion for such amendment was made more than two years after decedent’s death. Moreover, in George v Mt. Sinai Hosp. (47 NY2d 170, supra) we recognized that an action against a defendant other than the State for personal injury brought by one not yet appointed administratrix was not a nullity and, therefore, authorized the administratrix after appointment to bring a new action after dismissal of her improperly brought action. Thus the present action so far as it seeks damages for personal injuries could, were it not against the State, be brought within six months after dismissal even though more than two years after date of death, and could, the original pleading having given notice of the occurrence on which the wrongful death claim is predicated, be amended to include the latter *953 claim.[4] That being so, I would uphold the order of the Court of Claims Judge allowing amendment, as properly within the discretion conferred upon him by the present language of subdivision 6.
For the foregoing reasons, the order of the Appellate Division should be reversed and that of the Court of Claims should be reinstated.
Order affirmed, etc.

. In lawyer’s Latin “Forma non observata, infertur adnullatio actus” — where the form is not observed, nullity of the act is inferred.

. The present provision (subd 6) even more clearly shows the order of filing and appointment not to be jurisdictional. As amended in 1976, that subdivision’s first and last sentence read:
“A claimant who fails to file a claim or notice of intention, as provided in the foregoing subdivisions, within the time limited therein for filing the claim or notice of intention, may, nevertheless, in the discretion of the court, be permitted to file such claim at any time before an action asserting a like claim against a citizen of the state which would be barred under the provisions of article two of the civil practice law and rules.
“In determining whether to permit the filing of a claim pursuant to this subdivision, the court shall consider, among other factors, whether the delay in filing the claim was excusable; whether the state had notice of the essential facts constituting the claim; whether the state had an opportunity to investigate the circumstances underlying the claim; whether the claim appears to be meritorious; whether the failure to file a timely claim or notice of intention resulted in substantial prejudice to the state; and whether the claimant has any other available remedy.”
The present provision thus broadens the factors on which discretion is to be exercised, provided only that filing be within the period a like claim could be filed against a citizen: whether the State had notice and an opportunity to investigate, whether the claim is meritorious, whether the State has been prejudiced, whether the claimant has any other available remedy. That EPTL 5-4.1 fixed the period a like claim could be filed against a citizen as “within two years after the decedent’s death” is without significance in the present context. The point is not that subdivision 6 lengthened the time for filing a death claim, but that it establishes the factors the Legislature deems significant in relation to jurisdiction.

. (Cardozo, Growth of the Law, at p 66: “Judges march at times to pitiless conclusion under the prod of a remorseless logic which is supposed to leave them no alternative. They deplore the sacrificial rite. They perform it, none the less, with averted gaze, convinced as they plunge the knife that they obey the bidding of their office. The victim is offered up to the gods of jurisprudence on the alter of regularity.”)

. I recognize that CPLR 203 (subd [e]) speaks of an amended pleading and EPTL 11-3.3 (subd [b], par [2]) contemplates death after action brought whereas here decedent died before the original claim, but would hold that claim to be an “original pleading” within the meaning of CPLR 203 (subd [e]) notwithstanding its claimed “nullity” and death to have occurred “before verdict, report or decision” within the meaning of the EPTL provision, the “limitation” in each case not being designed as such, but rather being intended by the Legislature to expand the right to bring a wrongful death action.