BLEMA NEWMAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6435–74. Filed July 11, 1977.

*Robert M. Lustig,* for the petitioner.
*James E. Dunn, Jr.,* for the respondent.

WILBUR, *Judge:* Respondent determined deficiencies in petitioner's Federal income tax for the calendar years 1968, 1969, and 1970 in the amounts of $1451.41, $1535.89, and $1507.40, respectively. Petitioner received $6600 in each of the years 1968, 1969, and 1970 from her former husband pursuant to a 1967 divorce decree. We must decide whether these amounts were installment payments in discharge of a principal sum and thus nontaxable to petitioner under section 71(c)(1),[1] or whether, under a 1973 nunc pro tunc court

---

[1] Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question.

entry retroactively correcting the original decree, such payments represent periodic payments taxable to petitioner under section 71(a).

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts with the exhibits attached are incorporated herein by this reference.

Blema Newman, petitioner herein, resided in Cleveland, Ohio, at the time the petition in this case was filed. For the years 1968, 1969, and 1970, petitioner timely filed her individual Federal income tax returns with the Internal Revenue Service Center in Cincinnati, Ohio.

Petitioner and Jerry I. Newman were married on September 3, 1943. On December 2, 1966, petitioner filed a complaint for divorce with the Common Pleas Court of Stark County, Ohio. Separate findings of fact and conclusions of law were made in the divorce action on April 3, 1967, by the Common Pleas Court. The court also made the following order:

(16) It will be the order of the Court that beginning May 1, 1967, the defendant pay to the plaintiff as and for permanent alimony the sum of $400.00 per month for a period of five years and $350 per month for a period of fifteen years thereafter. Provided, however, that said alimony shall terminate upon the remarriage of plaintiff, or upon her gainful employment in any month in which she earns in excess of $350.00 gross income.

This above order regarding alimony payments was not included in the schedule of the assets and liabilities (and their distribution) attached as part of the April 3, 1967, findings and conclusions.

On June 26, 1967, pursuant to a motion for reconsideration filed by Blema Newman, the Common Pleas Court filed supplemental findings of fact and conclusions of law. These supplemental findings altered the April 3, 1967, findings of fact in pertinent part as follows:

(23) Item (16) will be stricken from the "Separate Findings."

(24) In addition to the other provisions of these orders, the Plaintiff will be granted, by way of alimony, the sum of $66,000, payable at $550 per month without interest, provided that delinquent installments shall carry interest at 7% per annum. These payments will begin May 1, 1967.

* * *

(27) The Court will expect a Journal Entry, conforming to these Opinions, to be provided to the Court by *July 3, 1967*. In the event counsel are unable

to agree upon an Entry, the Court will prepare its own Entry or sign such Entry as is prepared by either counsel, consistent with these orders.

On July 3, 1967, the Common Pleas Court entered a divorce decree granting petitioner a divorce from her husband, Jerry I. Newman. In addition to the allocation of various assets and liabilities between Blema Newman and Jerry I. Newman, the court in a separate paragraph required that alimony be paid to petitioner in the following manner:

It is further ordered, adjudged and decreed that plaintiff be granted the sum of Sixty-Six Thousand Five Hundred Fifty Dollars ($66,550.00) as gross alimony, payable at the rate of Five Hundred Fifty Dollars ($550.00) per month without interest. Delinquent installments, however, shall bear interest at the rate of seven per cent (7%) per annum. *Payments on this award shall begin May 1, 1967.* * * * [Emphasis added.]

Concurrently with the entry of the divorce decree, the Common Pleas Court filed the following memorandum explaining the basis for its order regarding the alimony payable to the petitioner herein:

Apropos the Memorandum of the Court, dated June 26, 1967, let it be clearly understood that the Order of the Court, fixing provisions for alimony (Item 24), was made upon the mistaken interpretation of the Internal Revenue Code that an order of ten years would qualify for alimony deduction to the Payor and income inclusion to the Payee. The Court has been advised that his understanding of the law is incorrect and that periodic payments in excess of ten years is [sic] required.

The Court will, therefore, approve a Journal Entry providing for the increase in the gross alimony, sufficient to provide for minimal, periodic requirements of the Internal Revenue Service.

Petitioner's counsel in the divorce proceeding was not involved in the preparation of the July 3, 1967, divorce decree. Moreover, neither petitioner nor her counsel in the divorce action had any prior knowledge of the modification to which the Common Pleas Court referred in its July 3, 1967, memorandum, i.e., that the principal sum (labeled gross alimony in the divorce decree) payable in monthly installments of $550 was being changed from $66,000 (120 months) to $66,550 (121 months). Petitioner's former husband actually commenced payment pursuant to the divorce decree July 5, 1967, by paying the first three installments due petitioner under the divorce decree of July 3, 1967, in one check dated July 5, 1967, covering the months of May, June, and July 1967.

A considerable amount of litigation regarding the decree of divorce ensued. Petitioner's former husband initiated the litigation on January 3, 1972, when, in an ex parte proceeding, he secured a nunc pro tunc judgment entry which attempted to backdate the effective date of the July 3, 1967, order of the Common Pleas Court to May 1, 1967. In issuing this January 3, 1972, nunc pro tunc judgment, the Common Pleas Court stated, in part:

> This nunc pro tunc entry is entered on the records to correct the judicial records insofar as they fail to record or improperly record the judgment heretofore entered in this cause.

Petitioner appealed the January 3, 1972, nunc pro tunc judgment entry to the Court of Appeals for Stark County, the Fifth Appellate District of Ohio (hereinafter the Court of Appeals). The Court of Appeals vacated this nunc pro tunc judgment entry on September 5, 1972, finding no authority under Ohio law for the backdating of the divorce decree.

Petitioner's former husband filed a second motion with the Common Pleas Court for an order nunc pro tunc with regard to the July 3, 1967, judgment entry. This motion was denied December 22, 1972. Subsequently, on February 27, 1973, the former husband filed a third motion for nunc pro tunc relief, which motion was denied by the Common Pleas Court. The Court of Appeals reversed the denial of this third motion for nunc pro tunc relief by the Common Pleas Court. The Court of Appeals explained its position in a memorandum opinion issued September 13, 1973, as follows:

> In its memorandum refusing relief, the trial court erroneously expressed the view that it was without power to do so because of a previous judgment of this court which held that the July 3, 1967 judgment could not be made to speak effective as of May 1, 1967.
>
> We did not hold that the trial court could not have corrected its entry nunc pro tunc as of July 3, 1967. Indeed it could have done so because that was the date when the entry was in truth and fact first filed with the Clerk for journalization.
>
> There is no question about the merits of this case, for the trial court expressly declared in writing that the alimony payments were intended to be a tax deduction for the husband and income taxable to the wife who received them.
>
> Therefore, we will enter final judgment which the trial court should have entered correcting nunc pro tunc that portion of the July 3, 1967 judgment entry heretofore entered in Court of Common Pleas in this cause in the limited particular that that portion of the judgment entry dealing with

alimony payments shall provide, instead of the present provision, that the "defendant, Jerry I. Newman shall pay to the plaintiff, Blema W. Newman, alimony at the rate of $550.00 per month commencing on July 3, 1967 and continuing at the rate of $550.00 per month for a period of 121 months, so that 121 monthly payments of $550.00 each shall have been paid."

This cause will be remanded to the Court of Common Pleas, Division of Domestic Relations, for execution of the final judgment herein entered nunc pro tunc to be effective July 3, 1967.

Petitioner's appeal to the Supreme Court of Ohio from the nunc pro tunc relief granted by the Court of Appeals was not successful.

Petitioner received the amount of $6600 per year during each of the years 1968, 1969, and 1970, from her former husband pursuant to the 1967 divorce decree. Petitioner included no part of the $6600 in her reported gross income for any of these 3 years. Respondent, in the statutory notice of deficiency, has included the $6600 received annually by the petitioner from her former husband in petitioner's gross income for 1968, 1969, and 1970.

OPINION

The only question for decision is whether the payments received by petitioner from her former husband in 1968, 1969, and 1970 are includable in her gross income under section 71.

Section 71(a) provides generally that an indivdual's gross income includes periodic payments received from a former spouse under a decree of divorce. For purposes of section 71(a), installment payments discharging part of an obligation the principal sum of which is specified in the decree are not treated as periodic payments. Sec. 71(c)(1). However, if by the terms of the decree the principal sum is to be paid or may be paid over a period ending more than 10 years from the date of such decree, then the installment payments are to be treated as periodic payments. Sec. 71(c)(2).

Petitioner received alimony payments from her former husband pursuant to a decree of divorce entered July 3, 1967 (hereinafter the original decree). Under the terms of this decree, the principal sum of $66,550 was to be paid to petitioner in monthly payments of $550, with payments on this award to commence May 1, 1967. Although this payment schedule is equivalent to a period for payment of more than 10 years (121 months), the payments are not periodic since

only 118 of the payments are to be made after the date of the original decree, a period which does not in fact end more than 10 years from the date of the decree. Sec. 71(c)(2). There is no dispute that under the terms of the original decree, the payments to petitioner would not be includable in her gross income. Of course, neither would the payments be deductible by the former husband under section 215.

This controversy arises as the consequence of a nunc pro tunc judgment entry secured by petitioner's former husband on September 13, 1973. Upon the initiative of petitioner's former husband, and after considerable litigation, the Fifth District Court of Appeals of Ohio issued an order nunc pro tunc correcting the divorce decree so that the payments were to commence on the date of the decree, and continue thereafter for a period of 121 months.[2] Therefore, the determinative issue is what effect, if any, is to be given the nunc pro tunc entry of September 13, 1973, with regard to the characterization of payments to petitioner by her former husband. It is respondent's position that the original divorce decree which required that the monthly payments were to commence May 1, 1967, was a mistake; that the State court's order of September 13, 1973, corrected the mistake retroactively; and that the effect of the order was nunc pro tunc, making the payments to petitioner in 1968, 1969, and 1970 periodic payments within the meaning of section 71(c)(2), and therefore taxable to petitioner under section 71(a). We agree with the respondent.

This Court has on a number of occasions considered the effect of a nunc pro tunc order on a divorce decree. In *Johnson v. Commissioner*, 45 T.C. 530 (1966), this Court held that a nunc pro tunc order entered 8 years subsequent to the original divorce decree had retroactive effect for purposes of section 71. This holding was based upon the finding by this

---

[2] Petitioner does not here dispute the power of an Ohio State court to grant nunc pro tunc relief the effect of which is at issue in this case. Ohio courts of record possess inherent common law power to enter nunc pro tunc judgments or orders in proper cases. *State v. Rankin*, 154 Ohio St. 23, 93 N.E.2d 281 (1950). The power of an Ohio court to make an entry nunc pro tunc is limited to its ability to make a previous entry speak the truth. This power can be exercised only to remedy omissions or to correct errors which are clerical in nature. It cannot be used to show what a court might have decided or could have decided but rather only to show what actually was decided. *Reinbolt v. Reinbolt*, 112 Ohio St. 526, 147 N.E. 808 (1925).

Court that the original decree did not correctly reflect the State court's intention at the time of its entry.

In the present case, there is ample factual evidence that it was the intention of the Common Pleas Court to make the alimony payments in question taxable to the wife and deductible by the husband, and it was only through miscalculation of the date for commencement of payment that this desired result did not ensue. The most persuasive evidence of the intention of the Common Pleas Court regarding the original divorce decree is the memorandum of the judge explaining the basis for the order for alimony. This memorandum was filed on the same date the original decree was entered.

Moreover, the various findings made by the Common Pleas Court pertaining to the divorce proceeding that are in the record before this Court all demonstrate a consistent attitude of the judge before whom the divorce proceeding was heard that the monthly payments be taxable to petitioner. Such an attitude or intent is evident beginning with the findings of fact and conclusions of law made on April 3, 1967, providing for monthly payments to petitioner subject to termination upon petitioner's remarriage, a contingency that is normally identified with periodic payments. Sec. 1.71–1(d)(3), Income Tax Regs. Later, the fact that the principal sum, to be payable in monthly installments, was increased by the amount of 1 month's payment evidences the intent of the Common Pleas judge to award petitioner 121 payments and thereby avoid the operation of the 10-year rule of section 71(c)(2). Finally, the monthly payments were separate and apart from the property settlement features of any findings by the Common Pleas Court and its eventual decree. Hence, the facts here clearly fit within the rule of *Johnson.* See also *Vargason v. Commissioner,* 22 T.C. 100 (1954); *Sklar v. Commissioner,* 21 T.C. 349 (1953).

The petitioner maintains that the terms of the original decree are controlling. Petitioner acknowledges the holding in *Johnson v. Commissioner, supra,* but argues that this doctrine should not be extended to the facts of this case. She places principal reliance on the rule that retroactive rulings by State courts cannot affect the rights of the Federal Government under the tax laws where the judgment seeks to change the

status of the parties after the tax has accrued. See *Daine v. Commissioner,* 9 T.C. 47 (1947), affd. 168 F.2d 449 (2d Cir. 1948); *Van Vlaanderen v. Commissioner,* 10 T.C. 706 (1948), affd. 175 F.2d 389 (3d Cir. 1949); *Segal v. Commissioner,* 36 T.C. 148 (1961); *Turkoglu v. Commissioner,* 36 T.C. 552 (1961). This rule is simply not applicable to the facts before us. The cases cited above which establish and apply this rule involve situations wherein a State court entered an order purporting to relate back to a prior date but which actually reflected an intention or design originating subsequent to that date, i.e., cases involving amendments to previous decrees rather than true nunc pro tunc orders.[3] In the instant case, however, the respondent has established that the retroactive order was entered to conform the terms of the earlier order to the intent of the court at the time the original order was entered.

Petitioner contends that the doctrine of retroactivity as applied in *Johnson v. Commissioner,* 45 T.C. 530 (1966), a situation involving the allocation of child support payments on the basis of a retroactive court order, is inapposite to this case involving the 10-year rule contained in section 71(c)(2). She argues that the 10-year rule provides an exact standard for determining whether certain payments pursuant to a divorce decree are periodic for purposes of section 71(a), a standard that should be strictly applied and to which there is no analogue under section 71(b). Consequently, the argument proceeds, the installment payment provision of the original

---

[3] Actually, the case of *Daine v. Commissioner,* 9 T.C. 47 (1947), affd. 168 F.2d 449 (2d Cir. 1948), did not involve a subsequent amendment of a prior decree. In *Daine,* a divorce decree entered in July 1944 required the husband to make monthly support and maintenance payments to his former wife. These payments essentially represented a continuation of payments under a Jan. 1, 1940, separation agreement, and the State court issued the divorce decree nunc pro tunc as of Jan. 1, 1940. Citing the rule that retroactive judgments of State courts do not determine the rights of the Federal Government under its income tax laws, this Court and the Court of Appeals for the Second Circuit held that the taxpayer was not entitled to deduct payments made to his former wife in 1942 and 1943, years prior to the divorce decree.

*Daine* is distinguishable from the instant case for two reasons. First, the Internal Revenue Code as in effect for the years 1942 and 1943 did not allow a deduction for payments made pursuant to a separation agreement, only for payments approved by a court order. Secs. 22(k) and 23(u), I.R.C. 1939. Hence, the *Daine* decision reflects the attitude that a retroactive court order should not be permitted to allow payments to be deductible when they were clearly not deductible under the statute when made. Second, in this case, the original decree did not correctly state the court's determination; there was no such error in the *Daine* case.

decree is not subject to correction merely because it did not reflect the intention of the court which issued the decree.

Petitioner grounds her argument in a series of cases requiring strict compliance with the requirements of the statutory 10-year rule. See *Casey v. Commissioner*, 12 T.C. 224 (1949); *Newman v. Commissioner*, 26 T.C. 717 (1956), affd. 248 F.2d 473 (8th Cir. 1957); *Blum v. Commissioner*, 10 T.C. 1131 (1948), revd. on another issue 187 F.2d 177 (7th Cir. 1951), cert. denied 342 U.S. 819 (1951). While these cases do suggest that the 10-year rule establishes formalistic criteria for determining the character of certain payments, they do not support petitioner's contention that *Johnson* should not apply to cases involving the 10-year rule. None of the cases actually involved the effect of a nunc pro tunc judgment that purports to correct payments subject to characterization by the 10-year rule; rather, these cases merely involve interpretations of payment schedules under original decrees, or court decrees that do not speak nunc pro tunc.[4]

Additionally, the reasons underlying the decision in *Johnson v. Commissioner, supra,* are sufficient to justify the application of the holding therein in the context of the 10-year rule, as well as with regard to child support payments. In light of the decision of the Supreme Court in *Commissioner v. Lester,* 366 U.S. 299 (1961), that periodic payments to a former spouse that satisfy the requirements of section 215 are fully deductible unless those amounts representing child support are specifically designated as child support in the decree or agreement, it is difficult to say that the standard of the 10-year rule is any more exacting than the standard for the allocation of child support payments.

---

[4] Petitioner relies in part on *Fuller v. Commissioner*, a Memorandum Opinion of this Court dated Sept. 30, 1949. The order purporting to be nunc pro tunc in that case simply incorporated an amendment agreed upon by the parties to an earlier property settlement agreement negotiated by the parties and incorporated in the original divorce decree. The square reliance on *Casey v. Commissioner*, 12 T.C. 224 (1949); *Van Vlaanderen v. Commissioner*, 10 T.C. 706 (1948); and *Daine v. Commissioner*, 9 T.C. 47 (1947), affd. 168 F.2d 449 (2d Cir. 1948), clearly demonstrates the Court viewed the facts as not involving a true nunc pro tunc order. To the extent the case stands for more, it is a Memorandum Opinion of this Court that is not controlling precedent (*Nico v. Commissioner*, 67 T.C. 647, 654 (1977)), and conflicts with our published opinion in *Johnson v. Commissioner*, 45 T.C. 530 (1966), and the precedents cited therein.

Petitioner is arguing that the need for certainty and predictability regarding tax matters precludes a rule allowing the tax character of payments to be changed or corrected by a retroactive judgment entered years after the payments were actually made. As an illustration, petitioner directs our attention to *Van den Wymelenberg v. United States*, 397 F.2d 443 (7th Cir. 1968), cert. denied 393 U.S. 953 (1968). The transaction involved in *Van den Wymelenberg* was a gift in trust to minors which, allegedly through inadvertence, did not qualify for the annual exclusion pursuant to section 2503(c). The Court of Appeals for the Seventh Circuit refused to allow the parties to the trust agreement to make retroactive changes to effect the intended tax result.

*Van den Wymelenberg* is clearly distinguishable. There are strong reasons for not permitting the parties to effect retroactive changes in gifts to minors that will alter their tax characterization under section 2503(c). The need for certainty under section 2503(b) would be undermined and potential abuse invited by allowing taxpayers, with the benefit of hindsight, to retroactively amend the terms of a gift subsequent to the transfer in trust (but still prior to the time the beneficiaries of the trust reach majority).

On the other hand, the typical divorce and the preparation of a decree under the scrutiny of a court greatly reduce the particular dangers that concerned the Seventh Circuit in *Van den Wymelenberg*.[5] Moreover, given the statutory policy underlying section 71, that the tax burden should fall upon the spouse actually receiving the income (H. Rept. 2333, 77th Cong., 2d Sess. 71 (1942), 1942–2 C.B. 372, 409; S. Rept. 1631, 77th Cong., 2d Sess. 83 (1942), 1942–2 C.B. 504, 568–570), we see no reason to frustrate this policy by ruling against the retroactive effect of a nunc pro tunc judgment entry when the error of the local court is clearly established. Therefore, we hold that the tax consequences of the payments to petitioner

---

[5] Again, *Van den Wymelenberg v. United States*, 397 F.2d 443 (7th Cir. 1968), cert. denied 393 U.S. 953 (1968), cited *Daine v. Commissioner*, 9 T.C. 47 (1947), affd. 168 F.2d 449 (2d Cir. 1948), and *Van Vlaanderen*, demonstrating that the court viewed the case as one of retroactive amendments that are quite different from court orders properly describable as nunc pro tunc.

by her former husband are determined by the original decree as corrected by the retroactive order.

*Decision will be entered for the respondent.*