MARY ELLEN BRENT, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7176–74.     Filed August 25, 1978.

---

*Joel A. Mendler,* for the petitioner.
*Joseph R. Goeke,* for the respondent.

WILBUR, *Judge:* Respondent determined a deficiency of $12,410.79, in petitioner's Federal income tax for 1970 and an addition to tax under section 6651(a) in the amount of $3,102.70.[1] The issues for decision are:

(1) Whether petitioner is taxable on one-half of the income earned by her husband during 1970;

(2) Whether the retroactive dissolution of the marital community under Louisiana law as of the date of filing the petition for divorce negates petitioner's Federal income tax liability on income earned by her spouse during the period between the filing of the petition and the final decree; and

(3) Whether petitioner is liable for the addition to tax under section 6651(a) for failure to file her 1970 income tax return.

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioner Mary Ellen Brent had her legal residence in New Orleans, La., at the time her petition was filed herein. The Federal income tax return of the petitioner for the taxable year 1970 was filed with the Service Center in Austin, Tex., on December 1, 1972.

Petitioner was married to Dr. Walter H. Brent, Jr., on April 1, 1950, in the State of Louisiana. She and Dr. Brent began to live separately and apart in February 1967. On March 26, 1970, Dr. Brent filed a petition for divorce against petitioner. A final judgment of divorce was rendered on December 9, 1971. Throughout their marriage, Dr. Brent and petitioner resided in the State of Louisiana.

On his 1970 return, Dr. Brent reported net income from his medical practice as an orthopedic surgeon of $75,207.51. Dr. Brent excluded one-half of his income, or $38,278.69 (including incidental investment income), as being owned by, and the

---

[1]All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.

property of, Mrs. Brent. However, the only money he gave to Mrs. Brent was $4,800 ($400 per month) in alimony pendente lite. Mrs. Brent has some separate property which she inherited from her father, also a physician, from which at least a part of the proposed deficiency may be paid. Mrs. Brent was never given access to her husband's financial records nor any of his business records. Dr. Brent did not provide her with a copy of his 1970 return or any of the information on which it was based.

In his notice of deficiency, respondent determined that the income earned by Dr. Brent in 1970 was community property under the laws of Louisiana and that petitioner was required to report one-half of such income on her return. The amount of income earned by Dr. Brent in 1970 and total deductions allowable against his 1970 income are not in dispute.

Respondent also determined that petitioner was liable for the failure to file penalty under section 6651(a). Petitioner had sufficient separate income to require a return for 1970, independent of any community income, but did not file a return for that year until December 1, 1972.

## OPINION

The first issue is whether, in Louisiana, a wife who is living apart from her husband, owns a vested one-half interest in the income earned by her husband, which she must report on her separate income tax return.

This question has been thoroughly explored in *Bagur v. Commissioner*, 66 T.C. 817 (1976). In that case, on similar facts, we held that under Louisiana law each spouse owns a one-half share of the community income and that a wife living separate and apart from her husband is responsible for reporting one-half the community income earned by her husband even though she has no control over, or knowledge of, his affairs. See also *Williams v. Commissioner*, T.C. Memo. 1976–348. We find *Bagur* to be controlling on this issue, and feel it is unnecessary to repeat its extensive discussion here.

Petitioner also argues, however, that since, under Louisiana law, a judgment of divorce is retroactive to the date the petition for divorce is filed, petitioner had no taxable interest in her husband's earnings after March 26, 1970, the date the petition for divorce was filed.

With respect to community income, as with respect to other

income, Federal tax liability depends on ownership. *United States v. Mitchell*, 403 U.S. 190, 197 (1971). In determining ownership, State law is controlling. *United States v. Mitchell, supra; Poe v. Seaborn*, 282 U.S. 101 (1930). In the instant case, petitioner's ownership interest in her husband's earnings must be determined by reference to the laws of Louisiana.

Article 155[2] of the Louisiana Civil Code Annotated (West 1972) provides that the judgment of separation from bed and board carries with it the separation of goods and effects and is retroactive to the date on which the petition for separation was filed. Although by its terms, article 155 applies only to a judgment of separation from bed and board, it is clear that it gives retroactive effect to both judgments of separation and of divorce. La. Civ. Code Ann. art. 159 (West 1972).[3] *Malone v. Malone*, 260 La. 759, 257 So.2d 397 (1972). Both parties agree with this characterization of Louisiana law. See Rev. Rul. 74–393, 1974–2 C.B. 28, 29.

Pursuant to article 155, the rights of the respective parties in the community property are determined as of the date the petition for separation or divorce is filed. In the instant case, petitioner has no interest in her husband's earnings and income after March 26, 1970; these earnings are his separate property. See *Roberts v. Roberts*, 325 So.2d 674 (La. Ct. App. 1976); *Foster v. Foster*, 246 So.2d 70 (La. Ct. App. 1971); *Aime v. Herbert*, 254 So.2d 299 (La. Ct. App. 1971).[4] Thus, we are not dealing with community income.

---

[2]La. Civ. Code Ann. art. 155 (West 1972) states:

"The judgment of separation from bed and board carries with it the separation of goods and effects and is retroactive to the date on which the petition for same was filed, but such retroactive effect shall be without prejudice (a) to the liability of the community for the attorneys' fees and costs incurred by the wife in the action in which the judgment is rendered, or (b) to rights validly acquired in the interim between commencement of the action and recordation of the judgment. Upon reconciliation of the spouses, the community may be re-established by husband and wife jointly, as of the date of the filing of the suit for separation from bed and board, by an act before a notary and two witnesses, which act shall be recorded in the conveyance office of the parish where said parties are domiciled, but which act shall be without prejudice to rights validly acquired in the interim between rendition of the judgment and recordation of the act of reconciliation."

[3]La. Civ. Code Ann. art. 159 (West 1972) states:

"The effects of a divorce shall not only be the same as are determined in the case of a separation from bed and board, but it shall also dissolve forever the bonds of matrimony, between the parties, and place them in the same situation with respect to each other as if no marriage had ever been contracted between them."

[4]Even without regard to the retroactive effect of the divorce decree, a wife's earnings, while she is living separate and apart from her husband, are her separate property. La. Civ. Code Ann. art. 2334 (West 1972). See *Bagur v. Commissioner*, 66 T.C. 817, 819 n. 2 (1976).

Under these circumstances we concur in petitioner's view that she is not taxable on Dr. Brent's earnings after March 26, 1970. See *Knodle v. Warren,* an unreported case (W.D. Wash. 1966, 19 AFTR2d 582, 67–1 USTC par. 9261). To hold otherwise would be to tax petitioner on income she was not only unaware of, but was not entitled to under State law.

In doing so, we emphasize that the parties agree that under Louisiana law the marriage was dissolved as of the date the petition for divorce was filed (March 26, 1970). Petitioner has no ownership rights in her husband's income after that date. Unlike much of the earlier litigation (*Bender v. Pfaff,* 282 U.S. 127 (1930); *United States v. Mitchell,* 403 U.S. 190 (1971); *Bagur v. Commissioner,* 66 T.C. 817 (1976)), we are not concerned with characterizing a wife's rights as vested, imperfect, or contingent. As to the months and years after separation (February 1967) and prior to the petition date (March 26, 1970), petitioner owned a vested right in her husband's income that, although imperfect, requires her to report half of his income, however unfair that may be. *United States v. Mitchell, supra; Bagur v. Commissioner, supra.* But as to her husband's income earned after the petition date—the date of dissolution of the community partnership under State law—petitioner owns no interest of any kind whatsoever—vested, imperfect, or contingent.

In *Bagur* we noted that upon the dissolution of the community, the husband must make a full accounting to his wife. *Creech v. Capitol Mack, Inc.,* 287 So.2d 497, 510 (La. 1973). However, in that case the divorce did not occur until 1968 and we were concerned only with the years 1960–66, when the parties were simply living apart. Apparently the income in issue accrued prior to the filing of the divorce petition.[5] We are here concerned with income from Dr. Brent's medical practice arising during the period between the petition date and the divorce. Unlike the circumstances in *Bagur,* this was income arising after the date the marriage is considered dissolved under Louisiana law; the income from his medical practice arising *after* that date belongs

---

[5] It is clear that *Bagur* was in no way concerned with the effect of La. Civ. Code Ann. arts. 155 and 159 on the taxability of income during the period after the petition was filed and before the divorce decree was issued. Probably for this reason, the opinion does not reveal the petition date. Nevertheless, from the dates involved, it appears that the income in issue arose prior to the filing for divorce.

entirely to Dr. Brent under State law, and no accounting for this income is required.

Respondent nevertheless argues that the community continues in existence during the divorce proceedings. Whether or not respondent is technically correct on this point, it is clear that the property rights of a divorced couple—which is the central focus herein—are determined as of the petition date. For example, the court stated in *Foster v. Foster*, 246 So.2d 70, 71 (La. Ct. App. 1971):

> There is another area in which the trial court erred * * * . The lower court used the date of the judgment of divorce as the date from which the various debits and credits for expenditures made or items received should be calculated. However, Article 155 of the Civil Code is quite clear in its pronouncement that the community is dissolved as of the date of the *filing* of the petition for separation from bed and board and not the date of the judgment of divorce. Hence, the community of acquets and gains existing between the plaintiff and the defendant was dissolved as of January 14, 1964 [the petition date] * * * [Emphasis supplied.]

Additionally, in *Aime v. Hebert*, 254 So.2d 299, 300 (La. Ct. App. 1971), the court stated that the "intent [of art. 155] was to provide for dissolution of the community between the parties as to the date on which the suit was filed."

Even if there is a measure of semantic truth in respondent's assertion, it completely misses the point. Once the petition for divorce is filed, the community immediately undergoes a real change, and is essentially in a state of settlement on the road to dissolution.[6] For example, the husband's right of alienation has become restricted, La. Civ. Code Ann. art. 150 (West 1972),[7] and during the suit for separation the wife may require an inventory of the community property in the possession of her husband. La. Civ. Code Ann. art. 149 (West 1972).[8] Additionally, while she is

---

[6]Respondent has not found this situation inconvenient in somewhat similar contexts. Proposed regulations under sec. 1239 (treating gains as ordinary income on certain sales between spouses) provide that spouses separated by an interlocutory decree of divorce will not be considered as husband and wife if the sale involved is made under a divorce decree and the decree is subsequently finalized. Sec. 1.1239–1(c), Proposed Regs., 43 Fed. Reg. 23608 (May 31, 1978).

[7]Art. 150 states:

"From the day on which the action of separation shall be brought, it shall not be lawful for the husband to contract any debt on account of the community, nor to dispose of the immovables belonging to the same, and any alienation by him made after that time, shall be null, if it be proved that such alienation was made with the fraudulent view of injuring the rights of the wife."

[8]Art. 149 states:

living separate and apart from her husband during the divorce proceedings, a wife's earnings are her separate property. La. Civ. Code Ann. art. 2334 (West 1972).

But the critical question is not whether the community continues to exist in some form on its way to dissolution, but whether under Louisiana law petitioner has any ownership rights to the income of her husband for the period between petition and divorce. The answer is clearly "no," for as noted, "the various debits and credits for expenditures made or items received should be calculated" as of the filing of the petition, when the community is dissolved. *Foster v. Foster, supra* at 71. And the manner in which these rights are determined under the Louisiana statute—by giving retroactive effect to the divorce decree—in no way alters the ownership rights of the parties.

Respondent also argues that the retroactive effect of the divorce decree under Louisiana law should not be recognized for tax purposes. Respondent has in the past insisted on tenacious adherence to State law even though it produced results that the Supreme Court in *United States v. Mitchell*, 403 U.S. 190, 205 (1971), described as "hard" and "exceedingly unfortunate"; it is therefore surprising to find him urging that we now ignore State law. In support of his argument respondent, both on brief and in his revenue ruling,[9] cites a number of cases: *United States v. Mitchell*, 403 U.S. 190 (1971); *Redmon v. United States*, 471 F.2d 687 (6th Cir. 1972); *West v. Commissioner*, 131 F.2d 46 (9th Cir. 1942); *Van Den Wymelenberg v. United States*, 397 F.2d 443 (7th Cir. 1968), cert. denied 393 U.S. 953 (1968); *Daine v. Commissioner*, 9 T.C. 47 (1947), affd. 168 F.2d 449 (2d Cir. 1948). These cases are individually distinguishable and as a group wide of the mark.

In *United States v. Mitchell, supra,* the Supreme Court held that a Louisiana wife is personally liable for Federal income tax on half the community income, even though she exercised her statutory right to exonerate herself from debts contracted during marriage by renouncing the community of gains. The *Mitchell* case involved two Louisiana women, Mrs. Mitchell, who was separated (1960) and divorced (1962) *after* the years in issue

---

"During the suit for separation, the wife may, for the preservation of her rights, require an inventory and appraisement to be made for the movables and immovables which are in possession of her husband, and an injunction restraining him from disposing of any part thereof in any manner."

[9] Rev. Rul. 74–393, 1974–2 C.B. 28.

(1955–59), and Mrs. Angelo, whose husband died in 1966, long after the years in issue (1959–61). Neither case involved in any way the retroactive effect of Louisiana Civil Code Annotated article 155 on the ownership of income. In exercising her power to renounce, Mrs. Mitchell was disposing of ownership rights she possessed under State law, as the exercise of the option available to her demonstrated. And the years involved were long before the events occurred leading to the wife's renunciation of her income. Cf. *United States v. Mitchell, supra* at 205. The State law property rights of both wives for this period were consistent with the treatment established by the Court with respect to their Federal income taxes.

In *Redmon v. United States, supra,* the court held that the restoration of notes by a divorced wife to her former husband did not relieve her of liability for taxes on the income she received on these notes during the period she held them. This restoration was required by a Kentucky divorce statute that did not operate to determine the wife's property rights as of the time she held the property. By contrast, article 155 of the Louisiana Code retroactively determined petitioner's property rights under State law as of the filing of the divorce petition.

The respondent's citation of *West v. Commissioner, supra,* is particularly inappropriate. In that case the taxpayer and his former wife secured a decree setting aside a prior divorce decree. In contemplation of the initial divorce decree the parties had entered into a settlement agreement which divided their community property and provided the taxpayer's wife with alimony. The court rejected the taxpayer's attempt to treat his post-divorce income as community property. The *West* court specifically determined, however, that the vacating decree did *not* purport to operate retrospectively on the settlement agreement.

*Van Den Wymelenberg* and *Daine* are also distinguishable from the instant case. In *Van Den Wymelenberg,* the court held an amended trust agreement executed by the taxpayers in 1963 could not retroactively determine the eligibility of a gift in trust to minors for the annual exclusion pursuant to section 2503(c), even though the amendment was drafted to relate back to the date of the original instrument. The Court of Appeals for the Seventh Circuit refused to allow the parties to the trust

agreement to make retroactive changes to effect the intended tax result.[10] Similarly, in *Daine* it was held that a nunc pro tunc decree could not retroactively determine the taxability of payments made to a wife under a voluntary separation agreement. The decree was issued in July 1944 nunc pro tunc as of January 1, 1940, although during this period (from 1940–44) payments pursuant to a separation agreement were not even deductible (secs. 22(k) and 23(u), I.R.C. 1939) and in entering into the 1940 separation agreement the parties had not contemplated that they would be deductible.

For the most part the cases cited by respondent involve action by individuals or by a State court at their behest "purporting to relate back to a prior date but which actually reflected an intention or design originating subsequent to that date." *Newman v. Commissioner*, 68 T.C. 494, 501 (1977). They often involved attempts, sometimes quite transparent, to entirely recast for tax purposes transactions entered into several years earlier.

This is simply not true of the Louisiana statute before us. The divorce proceeding was not brought nor the statute in issue enacted for the purpose of directly affecting income tax liability. Moreover, the property rights on which the liability for the tax is based fall as a natural consequence of divorce, and these rights are clearly defined under State law. The instant case therefore stands in contrast to those situations where there is potentially collusive action in the State courts to obtain a given tax result. We therefore hold that, at least under the peculiar and distinct circumstances presented by Louisiana law, that the State retroactivity provisions should be given effect for tax purposes. Whatever validity respondent's position may have in some other factual context, respondent's choice to ignore the State retroactivity provisions here is inappropriate.

Respondent further argues that even if the provisions of article 155 are controlling in determining Federal income tax

---

[10]In commenting on *Van den Wymelenberg v. United States*, 397 F.2d 443 (7th Cir. 1968), cert. denied 393 U.S. 953 (1968), in *Newman v. Commissioner*, 68 T.C. 494, 503 (1977), we stated:

"There are strong reasons for not permitting the parties to effect retroactive changes in gifts to minors that will alter their tax characterization under sec. 2503(c). The need for certainty under sec. 2503(b) would be undermined and potential abuse invited by allowing taxpayers, with the benefit of hindsight, to retroactively amend the terms of a gift subsequent to the transfer in trust (but still prior to the time the beneficiaries of the trust reach majority)."

liability, Federal income taxes are exempted from the article's retroactive effect by the article itself. The statute provides in part:

Art. 155 The judgment of separation from bed and board carries with it the separation of goods and effects and is retroactive to the date on which the petition for same was filed, but such retroactive effect shall be *without prejudice* (a) to the liability of the community for the attorneys' fees and costs incurred by the wife in the action in which the judgment is rendered, or (b) to rights validly acquired in the interim between commencement of the action and recordation of the judgment. * * * [Emphasis added.]

Respondent contends that the Federal tax collector is one whose rights have been "validly acquired in the interim." We disagree. This relief provision was meant to protect creditors who would otherwise be prejudiced by their reliance on the community. This need to protect creditors is further emphasized by the rule in Louisiana that community debts are not the personal liabilities of the wife. La. Civ. Code Ann. art. 2403 (1972); *Smith v. Viser*, 117 So.2d, 673 (La. Ct. App. 1960). The Government here has given up nothing by relying on the community; for the Government it is merely a question of whom to tax. We do not believe that the Federal tax collector comes within the relief provisions of the statute.

The final issue is whether petitioner is liable for the addition to tax under section 6651(a) for failure to file her 1970 income tax return. Section 6651(a) provides for an addition of tax of up to 25 percent of the tax due for failure to file a timely return, "unless it is shown that such failure is due to reasonable cause and not due to willful neglect."

Petitioner has presented no evidence which might demonstrate reasonable cause. While petitioner suggests that she was unaware of the income earned by her husband in 1970, we note that she had sufficient separate income to require the filing of a Federal income tax return. Under these circumstances, we must sustain respondent's determination.

*Decision will be entered under Rule 155.*