MARJORIE A. SCHMIDT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schmidt v. Comm'r
Docket No. 9874-77. United States Tax Court
T.C. Memo 1981-38; 1981 Tax Ct. Memo LEXIS 707; 41 T.C.M. (CCH) 793; T.C.M. (RIA) 81038; January 29, 1981. Ted Musick, for the petitioner. John L. Simpson, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: *708 Respondent determined deficiencies in petitioner's income tax for the year 1968 in the amount of $ 14,499.40 and for the year 1972 in the amount of $ 5,009.45. The issues for decision are (1) whether petitioner was married to Henry A. Hegar in 1968 and 1972, making her liable for federal income taxes on one-half of the community income during these years and (2) whether petitioner's deficiencies in income tax are based on items of community income. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation and the attached exhibits are incorporated herein by this reference. At the time the petition in this case was filed, petitioner resided in Cypress, Texas. Petitioner did not file income tax returns for the years here involved. Petitioner married Henry A. Hegar (hereinafter "Hegar") in 1965. Hegar had been twice previously married. Petitioner was judicially divorced from Hegar on March 20, 1967. No children were born of or adopted by petitioner during her marriage to Hegar. A community property settlement was ordered by the Court at the time of petitioner's divorce from Hegar. However, the terms of that community property settlement were not carried *709 out because petitioner and Hegar resumed marital relations shortly after their divorce; the community property remained as it was prior to the divorce. On December 12, 1968, Hegar sold a trace of land covering approximately 307 acres located in Harris County, Texas. Hegar had inherited one-half of this land after his mother's death, and the remaining one-half after his father's death. The consideration for Hegar's sale of inherited land was a promissory note for $ 517,377.61 at the rate of six percentage interest per year. The note required the prepayment of three years' interest on the principal balance, or $ 93,127.98, contemporaneously with its execution. Respondent admits that the real property sold by Hegar in 1968 was Hegar's separate property under Texas law. Respondent concedes that the gain from the sale of this land is not taxable to petitioner. Respondent also concedes that oil royalty payments received by Hegar in 1968 from a mineral interest retained by him in the land are not taxable to petitioner. On March 28, 1969, Hegar purchased seven tracts of land (covering approximately 823 acres) located in Burleson County, Texas. Later that year, on September 23, 1969, Hegar *710 was declared non compos mentis by the Probate Court, Harris County, Texas, and his son, William C. Hegar, was appointed as guardian of Hegar's estate. On October 13, 1970, petitioner filed an Original Petition in the Court of Domestic Relations, Harris County, Texas, under the caption: In the Matter of the Marriage of Majorie Ann Hegar and Henry A. Hegar, Docket No. 849744. In that pleading petitioner alleged that she and Hegar had been legally married in 1965 and divorced in 1967, and that, two months after the divorce was granted, Plaintiff and Defendant contracted and agreed to resume their marital relations, and agreed that they would in all respects be married, they consummated this marriage agreement and they held themselves out as man and wife, each considered themselves and each other as man and wife and the Plaintiff moved back into the community home with her children and with his children. Petitioner alleged in the alternative in the aforementioned pleading that, if the Court and eventually the jury find that this Plaintiff was not legally married to the Defendant by resuming the marital relationship, after divorce, then this Plaintiff respectfully prays this *711 Court that she is a common law wife, in that she and her children lived in the community home with the Defendant for many years and that she resumed the marital relations with the Defendant with the understanding, contract and agreement that she was his wife. She was introduced by the Defendant as his wife, and by his children as the wife of the Defendant; she considered herself his wife; the children considered her his wife; she consummated the marriage on many occasions since she went back to him as his wife. Therefore, she if not by legal ceremonies, and if not as a matter of law, became the common law wife of the Defendant; living with him until after he was released from the Psychiatric Ward, when he became physically dangerous to her and she left him for her own safety. Petitioner requested the Court of Domestic Relations to grant her a second divorce from Hegar and award her her one-half share of the community property. This pleading, petitioner's Original Petition in her second divorce action against Hegar, was signed by petitioner. In January, 1972, Hegar's status as non compos mentis was removed by the Probate Court. Thereafter, in January, 1972, Hegar sold four *712 of the Burleson County tracts of land and realized a capital gain of $ 24,262.72 on the sale. On September 15, 1972, petitioner filed a First Amended Petition in the Court of Domestic Relations divorce action in which she restated the same allegations referred to above and included an accounting of alleged community property. Petitioner claimed a community interest in the $ 517,377.61 promissory note and other proceeds from the sale of real property by Hegar in 1968 and 1972. On November 2, 1973, the Court of Domestic Relations, Harris County, Texas, in Hegar v. Hegar, No. 849,744, rendered a judgment wherein it stated: That the parties, both Plaintiff [Majorie Ann Hegar] and Defendant [Henry A. Hegar], shortly after divorce in 1967 contracted and agreed to resume their marital relations, agreeing to become married, consummating such agreement through cohabitation as man and wife and holding out to the community such marital relationship. That thereafter the parties separated and ceased living together as husband and wife in the year 1969 and that by virtue of the acts and conduct on the part of the Defendant, Plaintiff is entitled to divorce herein. The Court of *713 Domestic Relations granted petitioner a second divorce from Hegar and ordered a community property division under which petitioner received, inter alia, a 22-1/2 percent interest in the $ 517,377.61 promissory note. Respondent based petitioner's income tax deficiency for 1968 on one-half of $ 93,127.98 of interest income on the promissory note from the sale of land by Hegar during that year. Respondent based petitioner's income tax deficiency for 1972 on one-half of $ 90,454.60 of interest income, and one-half of $ 24,262.72 of capital gain from the sale of land by Hegar during that year. OPINION The first issue for decision in this case is whether petitioner was married to Hegar in 1968 and 1972. Petitioner contends that she was not married to Hegar during the years in issue since her cohabitation with him was not intended to be permanent and their holding out to the general public that they were married was only for their convenience. Respondent contends that petitioner and Hegar established a common-law marriage in Texas in 1967 which did not terminate until divorce in 1973. Therefore, respondent argues, interest income on the promissory note from the sale of land in *714 1968 and 1972 and capital gain from the 1972 sale of land was community income, under Taxes law, one-half of which should have been included in petitioner's gross income for those years. At trial, petitioner testified about the details of her relationship with Hegar after their first divorce, but denied that she was ever married to him at that time. Her testimony in this Court on the issue of her marital status after her first divorce contradicts the averments of her signed petition for a second divorce filed in the Court of Domestic Relations. We give little weight to petitioner's testimony denying certain facts which she previously alleged were true in the Court of Domestic Relations. We find her testimony in this Court on the issue of her marital status self-serving and not credible. We have often held that where the language of a federal tax statute depends upon the marital status of the parties, state law controls. Marriage, its existence and dissolution, is particularly within the province of the states. Untermann v. Commissioner,38 T.C. 93 (1962); Gersten v. Commissioner,28 T.C. 756 (1957), affd. on this issue, 267 F.2d 195 (9th Cir. 1959); *715 Eccles v. Commissioner,19 T.C. 1049 (1953). Accordingly, we consider ourselves bound by the findings of the Court of Domestic Relations, Harris County, Texas, that the petitioner and Hegar established a common-law marriage shortly after their first divorce in 1967. At that time they contracted and agreed to resume their marital relationship, lived together as husband and wife and represented to others that they were married. See TEX. FAM. CODE ANN., sec. 1.91 (Vernon). In Texas, a common-law marriage is a legal and valid marriage and can only be terminated by death, divorce or annulment. Tatum v. Tatum,478 S.W. 2d 629 (Tex. Civ. App. 1972). We hold that petitioner and Hegar established a common-law marriage shortly after their first divorce in 1967 which did not terminate until November 2, 1973, when the Court of Domestic Relations granted petitioner a second divorce. Therefore, petitioner was married to Hegar in 1968 and 1972, the years in issue in this case. The next issue is whether petitioner's deficiencies in income tax are based on items of community income. Texas is a community property state. See TEX. FAM. CODE ANN., sec. 5.01, et *716 seq.[1] A common-law marriage in Texas products the same consequences as a ceremonial marriage. Whaley v. Peat,377 S.W. 2d 855 (Tex. Civ. App. 1964). Therefore, community property rights apply to a common-law marriage. It is clear that the realty that was sold by Hegar in 1968 was his separate property because it was acquired by devise. Respondent concedes that the capital gain and royalty income in 1968 from such property was Hegar's separate property. However, the interest income in 1968 and 1972 from the promissory note received by Hegar for the sale of land in 1968 was community income. LeSage v. Gateley,287 S.W. 2d 193 (Tex. Civ. App. 1956); *717 Cadwell v. Dabney,208 S.W. 2d 127 (Tex. Civ. App. 1948). The capital gain from the sale of realty in 1972 was community income because the evidence shows that the realty was purchased by Hegar in 1969, while petitioner and Hegar were married. Property acquired by purchase during marriage is presumptively community property under Texas law. See TEX. FAM. CODE ANN., sec. 5.02. [2]
A spouse in a community property state is liable for the federal income tax on one-half of the community income realized during the existence of the community. United States v. Mitchell,403 U.S. 190 (1971). This Court has held that such tax liability arises from a spouse's ownership in community property under state law, and that the liability continues during a period of separation, even if the spouse receives none of the community income. Bagur v. Commissioner,66 T.C. 817 (1976), remanded 603 F.2d 491 (5th Cir. 1979); Hill v. Commissioner,32 T.C. 254 (1959). *718 In light of the sometimes harsh consequences that this principle brings to bear on unsuspecting wives, the Fifth Circuit Court of Appeals, in two recent cases from Louisiana, has proposed that the wife may be allowed a theft loss deduction, under section 165(c)(3), [3] where the husband appropriates his earnings to his own purposes in such a way as to be the equivalent of a theft of the wife's ownership of one-half of the earnings. Brent v. Commissioner,     F.2d     (5th Cir. Nov. 13, 1980), rev'g. and remanding 70 T.C. 775 (1978); Bagur v. Commissioner,supra. The Bagur case was subsequently settled; no further findings of fact or opinions were rendered on the issue of a theft loss deduction. The Brent case has not as yet been further considered on remand. Thereafter, this issue has never been addressed by this Court. We note that petitioner did not raise this issue or cite either the Bagur or Brent case at any time during the proceedings before this Court. *719 However, since this case is appealable to the Fifth Circuit, it is incumbent upon us to consider the possibility of a theft loss deduction under the guidance provided by Judge Wisdom's opinion in Bagur,supra. The relevant passages of that opinion on this issue are as follows: We say, however, in view of a wife's half ownership of her husband's earnings, that for federal tax purposes a husband may have committed the equivalent of the theft of the wife's share, in the circumstances these cases present. * * * The equivalence of theft rests on the husband's bad faith appropriation to his uses of the wife's share of his earnings, over which is wife had no control, of which she had no knowledge, and from which she had little or no benefit. Bagur,supra, at 494-495. We hold, however, that an intent to deprive a wife permanently of her share of the community income may be inferred from a husband's wanton appropriation of community assets in pursuit of his own pleasure or needs. Bagur,supra, at 502. The use of the words "bad faith appropriation" and "wanton appropriation" suggest that a particular state of mind of the husband is necessary for finding *720 the equivalence of a theft of the wife's community share. Furthermore, the wife's lack of control over, knowledge of, and benefit from her "appropriated" share of the community income are important in determining theft equivalence. In Brent,supra, the Fifth Circuit Court of Appeals reversed the Tax Court's holding that gave retroactive effect to a divorce decree (an issue not present in this case) and remanded the case for consideration of the possibility of a deduction or an amended tax return, issues not considered at trial. Hegar died before the trial in this Court. There is little evidence of his state of mind other than petitioner's testimony about his alcoholic and violent tendencies and his judicial declaration as non compos mentis. Specifically, there is no evidence of the nature of his "appropriation" of community income or where such income went other than petitioner's testimony that she did not receive any of the money from the 1968 land sale. While the allowance of a theft loss deduction may be justified to balance the hardship of imposing an income tax on income never received, see Bagur,supra, we do not think the facts of the case at bar justify *721 such treatment. Petitioner was judicially divorced from Hegar for the first time in March, 1967. At the point the community between them terminated as did petitioner's liability for income tax on one-half of Hegar's income. However, petitioner and Hegar voluntarily chose to ignore the divorce judgment and resumed marital relations shortly thereafter. Petitioner and Hegar lived together as husband and wife during the years 1967 to 1969. Hegar's sale of inherited land and the receipt of interest income, which is the basis of the 1968 deficiency assessed against petitioner in this case, occurred in 1968. Petitioner and Hedgar ceased living together at sometime during 1969. Then, in 1970, petitioner, by instituting a cause of action for a second divorce, voluntarily sought a judicial acknowledgment of her common-law marriage with Hegar. In so doing she was fully aware of the existing facts, including the windfall Hegar received due to the 1968 land sale. Later, in 1972, she amended her petition for a second divorce at a time when she was fully aware of Hegar's 1972 land sales. Petitioner in this case was clearly in a better and more knowledgeable position than the wife *722 in Bagur,supra, who was not only unaware of the amount of her husband's earnings but was also incapable of ascertaining such facts, and the wife in Brent,supra, who lacked knowledge of the facts. There is simply no basis in the record for concluding that Hegar committed the equivalence of a theft of petitioner's share of community income. Furthermore, in the Court of Domestic Relations, petitioner successfully obtained the benefits of marriage with Hegar by establishing her rights to community property. Here, she seeks to avoid the tax consequences incident to her established marital relationship. We hold that under the circumstances of this case petitioner is not allowed a loss deduction for the equivalence of a theft of her share of community income during either 1968 or 1972. Finally, petitioner argued on brief that respondent is barred from asserting the deficiencies in income tax at issue in this case under the doctrine of res judicata, because of a temporary injunction obtained by petitioner in 1974. The United States District Court for the Southern District of Texas, Houston Division, issued a 30-day temporary injunction restraining the government from *723 taking collection action against the $ 517.377.61 note. Hegar, et al. v. Stakem, et al., No. 74-H-272 (S.D.Tex., March 11, 1974) (order granting temporary injunction). The United States District Court found a narrow exception to section 7421 (relating to prohibition of suits to restrain assessment or collection of any tax), since petitioner showed that she and Hager were entitled to deductions which were not taken. Under the extraordinary circumstances of the situation and in light of the irreparable harm that petitioner and Hegar would suffer, the United States District Court granted them a 30-day temporary injunction so that they could file amended tax returns. Application of the doctrine of res judicata requires that the prior judgment be final, that the same issues be involved in the two cases, and that the same parties or their privies be involved in both cases. Commissioner v. Sunnen,333 U.S. 591 (1948). The order for a temporary injunction is not a final judgment. The issues in the two cases are not the same; the District Court did not determine petitioner's income tax liability in 1968 and 1972, but only decided to issue a temporary injunction *724 against collection activity. Thus, it is clear that respondent is not barred by res judicata from asserting the deficiencies against petitioner in this case. Due to concessions by respondent, Decision will be entered under Rule 155.
Footnotes
1. Section 5.01. "Marital Property Characterized" provides: (a) A spouse's separate property consists of: (1) the property owned or claimed by the spouse before marriage; (2) the property acquired by the spouse during marriage by gift, devise or descent; and (3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage. (b) Community property consists of the property, other than separate property, acquired by either spouse during marriage.↩
2. Section 5.02. "Presumption" provides: Property possessed by either spouse during or on dissolution of marriage is presumed to be community property.↩
3. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise specifically indicated.↩