OPINION OF THE COURT
Herbert Kramer, J.
*494 Covenant House seeks an order placing petitioner, an 18-year-old Haitian refugee, into foster care. Since petitioner is currently too old for placement, Covenant House has petitioned for an order nunc pro tunc to August 13, 1997 when petitioner was 17 years of age.
In support of this petition it is alleged, inter alia, that the refusal of the Administration for Children’s Services (ACS) to accept Mr. Olivier’s[1] transfer of the care and custody of petitioner, immediately prior to his majority, was a violation of lawful procedure as set forth in Social Services Law § 384-a.
Section 384-a allows a parent or guardian to voluntarily transfer the care and custody of a child to an authorized agency. This transfer is accomplished by means of a written instrument which must include specified details. (Social Services Law § 384-a [2].) If placement is going to extend beyond a 30-day period, the Department of Social Services must seek the approval of a Judge of the Family Court by annexing the written instrument to a petition for a hearing pursuant to Social Services Law § 358-a.[2]
“One of the primary purposes of section 358-a is to assure judicial supervision over the voluntary placement of children in foster care as public charges. Both State and Federal funding to local agencies is conditioned on this judicial approval * * *
“It is apparent the Legislature feels that each placement should receive judicial perusal within this 30-day time period”. (Matter of Lydia H., 77 Misc 2d 807, 808 [Fam Ct, Kings County 1974].)
It is undisputed that Mr. Olivier never executed a written instrument voluntarily surrendering petitioner to the care and *495 custody of the agency.[3] This course of action would have invoked the jurisdiction and supervision of the Family Court and, if timely, would have afforded petitioner an appropriate forum for and means to the end he now seeks.
In the absence of a duly executed and timely document of surrender, petitioner seeks a nunc pro tunc order in a rather transparent effort to circumvent the carefully legislative provisions governing the voluntary placement of children in foster care. Indeed, as petitioner himself correctly asserts, such order would have to be preceded by a finding that petitioner “was a destitute minor, eligible for foster care on August 13, 1997.”
This court, however, is not empowered to make such a finding after the fact because “ A court has no power to have a new order or ruling so entered, thus bringing into the record an element which did not previously exist. The facts must exist, and then if the record of them is imperfect or incomplete, it may be amended’ ”. (Mohrmann v Kob, 291 NY 181, 186 [1943].)
The petition is dismissed.

. According to the facts alleged in the petition, “Yves and his younger brother Benito fled Haiti with an older brother due to political turmoil. They were interdicted in international waters and were detained at Guantanamo, Cuba. Yves and Benito were subsequently separated from their older brother whose whereabouts remain unknown. The United States Government paroled the boys into the care of their cousin, Mr. Jocelyn Olivier in June 1995. Upon information and belief, Mr. Olivier is the only adult relative of Yves * * * who resides in the United States.”

. Respondent’s counsel, in her affirmation in reply, asserts that petitioner seeks nunc pro tunc placement not because he is a destitute child truly in need of foster care, but because he needs an order from the court “stating that he is a destitute child in need of long term foster care in order to obtain his ‘green card’ ”.

. In this regard, a chronological recitation of the events that occurred after August 13, 1997, when, Irvine Charles, a case manager at the Haitian Women’s Program accompanied Mr. Olivier, Yves and Benito Lazarre to an ACS office to effect a voluntary surrender of petitioner is instructive. Respondent, in her affirmation in reply, states that “on August 21, 1997, Stacey Lam, an attorney for Covenant House, brought Petitioner and his sibling to [ACS] for placement. The caseworker [CW Robertson] * * * spoke to Petitioner and his brother and at that time they informed him that they left Mr. Olivier’s home at midnight and slept in the hallway. They later went to the Haitian Women’s Program and were directed to go to Covenant House. On August 21, 1997, Petitioner and his brother were placed at the Atlantic Diagnostic Center * * * On August 21, 1997, CW Robertson, phoned the Haitian Woman’s Program and spoke to Mr. Hans, who he told to call in a report against Mr. Olivier to the State Central Registry [SCR]. Mr. Hans agreed to do so * * * On August 22, 1997, CW Robertson, again phoned the Haitian woman’s Program to speak to Mr. Hans. Mr. Hans stated that he had not called in a report as he was concerned as to the effect it would have on Mr. Olivier’s legal status in the United States * * * CW Robertson contacted the SCR himself to make the report. He was informed by the SCR that a report cannot be made once a child has turned eighteen years of age even if the child had been placed the day before. Since Petitioner turned eighteen on August 22, 1997, the SCR would not take the report for him. However, the SCR did take the report for his brother, Benito Lazarre * * * On August 25, 1997, a petition was filed pursuant to Article Ten of the Family court Act in Brooklyn Family Court for Benito Lazarre naming Jocelyn Olivier as the Respondent”.